STATE, Respondent, v. SCARBROUGH, Appellant.\*

*No. State 211.   Argued May 4, 1972.—Decided June 8, 1972.*
(Also reported in 197 N. W. 2d 790.)

\* Motion for rehearing denied, without costs, on September 6, 1972.

182

For the appellant there were briefs and oral argument by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. The issue is whether the defendant Scarbrough was denied his constitutional right of assistance of counsel for his defense.

The basic facts of the robbery as shown by the evidence offered by the state are as follows: Shortly after noon on August 23, 1970, Scarbrough came through the back doors of an A & P store located on West State Street in Milwaukee. He was carrying a brown bag and walked up to the checkout counter area and said to the assistant manager, Ronald Beitzel, that he wanted a package of Pall Mall cigarettes. When Beitzel turned around to give him the cigarettes the defendant said, "This is a holdup." Beitzel could see the defendant's hand in the bag and also a part of the barrel and the handle of the gun. The defendant told him he wanted all the money out of the first register, including the change, and the money in the office. Beitzel gave him the currency and the coins, including a roll of nickels and a roll of pennies. The defendant then forced Beitzel to leave the store and walk with him through an alley and up a street for about one-half block. During this time the defendant told Beitzel to walk slower or "I'll blow your head off." Beitzel returned to the store and called the police. A subsequent check of the cash revealed somewhat more than $300 was missing.

Within minutes after the report the police apprehended Scarbrough walking on the street a few blocks from the A & P store. Scarbrough had a brown bag and $307 which included loose change and a roll of nickels

and a roll of pennies. Beitzel was called and immediately identified Scarbrough as the person who robbed him a few minutes before. The defendant Scarbrough did not have a gun when apprehended, but the police, by walking a direct route to the A & P store, found a toy gun in some bushes along the sidewalk. Two additional persons who had been in the immediate vicinity of the store positively identified the defendant as the man who was with Beitzel walking out of the store and down the alley at the time of the robbery. Scarbrough did not testify at the trial nor offer any proof in his own behalf, although he did make an opening statement and a final argument to the jury.

At the day of trial, after the case was called and the jury about to be drawn, the defendant Scarbrough, in chambers, stated that he wanted Mr. Berman to withdraw from his case.

The record reveals that the ensuing *in camera* discussion between the defendant Scarbrough, Mr. Berman, the trial judge and the assistant district attorney was extensive, with the defendant given ample opportunity to state his position. In substance, the defendant stated that he did not want and would not permit Mr. Berman to represent him in this case. He acknowledged that Mr. Berman was competent and that he had done a good job for him in other criminal cases.[1] His objection to Berman in this case was that Berman would not agree to try the case in the manner the defendant wanted it tried. Scarbrough did not want to try his case without a lawyer and in fact insisted he did not know how to try a case because he was not a lawyer. He did on several occasions demand that another lawyer be appointed for him. He further stated he would disrupt the trial if another lawyer was not appointed. (This threat was carried out at least to some degree.)

---

[1] Including a recent forgery charge wherein the case was dismissed and the defendant thereafter acknowledged he was guilty.

In chambers Scarbrough claimed that he had never been in the A & P store and that he had been gambling that morning and won the money found on him in a "crap game."

Mr. Berman is, without doubt, a highly competent and extensively experienced lawyer in the defense of criminal cases. He informed the court in chambers that he had thoroughly prepared the case and was prepared to go to trial on a not guilty plea. He also stated he had discussed the matter on several occasions with the district attorney and that a plea bargain could be entered into if the defendant so desired. The defendant did not want to enter into the plea bargain and Berman advised the defendant they would then go to trial.

In response to Scarbrough's statement that Berman would not try the case the way he wanted to, Berman replied:

"Mr. Scarbrough imagines I might not be working overtime on this, but I can only go on what was told to me by my client, the police reports, my test—my conversations with the district attorney, my own reading of the newspaper accounts, the witnesses at the preliminary hearing, there was a long extensive preliminary hearing; based on all those facts, I could not do anything but what I have done today. I am willing to represent him in a jury trial and defend him as best I can under the facts. Of course, as an attorney I cannot manufacture facts that Mr. Scarbrough would like to hear. I cannot manufacture alibi witnesses. I cannot manufacture a fact situation which places him elsewhere than where he was at the time. All I can do is defend him on the facts. That's all any attorney can do, and I am willing to do so."

The record also reveals that the trial judge, Honorable ROBERT C. CANNON, listened extensively and patiently and sought to advise the defendant in order to resolve the question of legal representation.

He advised the defendant that because the jury, the witnesses and the court personnel were in attendance

for the purpose of hearing this case, because he knew that Mr. Berman was competent and experienced in the trial of criminal cases, and because Mr. Berman was present and ready and willing to try the case he would not appoint another counsel.

The trial judge did permit the defendant to refuse to allow Mr. Berman to try the case or otherwise represent him and extended these alternatives to him, to wit: (1) He could keep Mr. Berman as his lawyer for the trial; (2) he could try his case alone; or (3) Mr. Berman could sit with him or be available to assist and advise him. The defendant Scarbrough rejected any assistance and the trial proceeded with defendant protesting he was not able to try his case because he was not a lawyer.

On two more occasions during the trial, conferences were had wherein the defendant requested and the court directed Mr. Berman to sit with and assist the defendant and on both occasions, after a short interval, the defendant dismissed Berman.

There can be no doubt that an indigent defendant is entitled to be assisted in his defense by appointed counsel. United States Constitution, arts. VI and XIV, and Wisconsin Constitution, art. I, sec. 7, and sec. 970.02 (1) (b), Stats.

However, the court has held in recent cases that the right of an indigent to counsel does not include the right to the particular counsel of the defendant's choosing. *Rahhal v. State* (1971), 52 Wis. 2d 144, 187 N. W. 2d 800; *State v. Johnson* (1971), 50 Wis. 2d 280, 184 N. W. 2d 107; *Peters v. State* (1971), 50 Wis. 2d 682, 184 N. W. 2d 826. Further, the question of whether an appointed counsel should be relieved and another attorney substituted in his place is one which lies within the province of the trial court's discretion. *State v. Johnson, supra,* page 285; *Peters v. State, supra,* page 687; *Rahhal v. State, supra,* page 147.

This court recently stated:

". . . Defendants in criminal cases often as a defense technique attempt to secure last-minute substitution of counsel to delay the trial and the practice has plagued the criminal courts in Milwaukee county. If such practice is recognized and allowed to continue, it will seriously interfere with the administration of criminal justice and the orderly and efficient scheduling and trying of cases. We agree with the majority of federal courts which have repeatedly held the right to counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice. *See United States ex rel. Baskerville v. Deegan* (2d Cir. 1970), 428 Fed. 2d 714, 716, and the cases cited therein.

"Moreover, in an analogous situation this court has held that when the moment of trial has arrived and the witnesses are present, the trial court has the right and duty to weigh the impact of a requested adjournment on other persons involved in determining whether defense counsel should be substituted or sua sponte be permitted to withdraw from the case. *Cullen v. State* (1965), 26 Wis. 2d 652, 658, 133 N. W. 2d 284. We conclude on this record the trial court did not abuse its discretion in not granting the last minute request for a substitution of appointed counsel." *Rahhal v. State, supra,* at pages 147, 148.

It is our opinion the trial court did not abuse its discretion in (1) permitting the defendant to discharge his appointed counsel,[2] and (2) requiring the defendant to proceed with the trial without counsel.

The trial court could infer from the statement of Mr. Berman (set forth above) that the defense of alibi was preposterous if not an out-and-out fabrication. Any litigant, whether indigent or not, does not have a right to unethical representation. A part of our statutory oath for attorneys at law provides:

[2] *Browne v. State* (1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. 2d 706; and *State v. Johnson, supra.*

"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land;

"I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law." [3]

If Mr. Berman found it unprofessional to conduct the defense in the manner demanded by the defendant, the trial court could conclude that any attorney it appointed would have the same objection.

From our review of the entire record, we are of the opinion that the defendant waived his right to counsel by dismissing his appointed counsel at the eleventh hour and by his rejection of the reasonable efforts of the court to furnish him with the assistance of counsel. We are of the further opinion that the trial court did not abuse its discretion in refusing to appoint another counsel and insisting that the trial proceed without counsel for the defendant.

*By the Court.*——Judgment affirmed.

[3] Sec. 256.29 (1), Stats.