171 N.J. Super. 161 (1978)
408 A.2d 434
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SAMUEL LEE MCCOMBS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted August 7, 1978.
Decided August 23, 1978.
*163 Before Judges SEIDMAN, PRESSLER and KING.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Martin A. Bierbaum, designated counsel, of counsel and on the brief).
*164 Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent (Mr. Albert G. Fredericks, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant was tried to a jury and found guilty of an assortment of offenses contained in a 13-count indictment, including two charges of breaking and entering with intent to steal, larceny, assault with intent to kill, armed robbery, assault and battery upon a police officer and possession of a knife. He was sentenced to an aggregate State Prison term of 36 to 45 years. This appeal ensued. For reasons that follow, we reverse and remand the matter for a new trial.
Although numerous grounds for reversal are argued in appellant's brief, it is unnecessary for us to consider any of them except the first, which asserts that "[t]he defendant's constitutional rights were seriously and prejudicially infringed when the court failed to grant him a continuance until he obtained counsel of his own choosing." Although we discern no merit in the contention per se, included within it is the argument that jury selection took place while defendant was not represented by counsel. The point is raised for the first time on appeal; nevertheless, it is a substantial one and we notice it as plain error. R. 2:10-2. We are convinced from our review of the record that defendant was deprived of his right to the effective assistance of counsel at a critical stage of the trial, as guaranteed by the Sixth Amendment of the Federal Constitution and of the New Jersey Constitution, N.J.Const. (1947), Art. I, par. 10.
On the day fixed for the trial defendant told the court he did not wish to be represented by the public defender assigned to the case, claiming that this was only the second time he had seen the attorney and that "each time it was only a matter of minutes." He said, additionally, that he had spoken to his mother "the other night" and was informed by her that "she [was] going to get me my private attorney." The trial judge *165 responded that the assigned public defender was an experienced and competent counsel and that the trial would not be delayed.
If the colloquy had ended at this juncture and the trial had gone forward with the assigned counsel participating notwithstanding defendant's vehement protests, we would have no difficulty in concluding on this record that defendant had failed to show substantial cause for seeking the discharge of his attorney. Cf. State v. Lowery, 49 N.J. 476, 489 (1967). In fact, when counsel was later ordered to assume the defense of the case, we are satisfied from our examination of the record that he performed his task thoroughly and competently. In the circumstances, the trial judge correctly rejected defendant's effort to dismiss his assigned counsel.
We find further that the trial judge properly declined to delay the trial until private counsel could be engaged. An indigent defendant must, of course, be provided with counsel, Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), but he has no right "to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented," State v. Rinaldi, 58 N.J. Super. 209 (App.Div. 1959), cert. den. 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 238 (1961). A defendant desiring to exercise the right to choose his own counsel must proceed to do so with reasonable diligence. Here, defendant not only waited until the trial was imminent to endeavor to obtain private counsel (or have his mother do so), but "there was no representation made as to the availability or retainer of any particular counsel or proof of present financial ability to secure one." State v. Reddy, 137 N.J. Super. 32, 35 (App.Div. 1975).
But error of constitutional dimension was committed when, after defendant obdurately persisted in his unwillingness "to go to trial with Mr. Rosenberg," the trial judge issued an ultimatum that if the services of the public defender were rejected, defendant would have to try the case himself. We cite the following excerpts from the lengthy exchange between the two:

*166 THE COURT: * * * Now if you want Mr. Rosenberg to represent you, he is here. * * * If you decide you would prefer to try the case without Mr. Rosenberg, then you have that right and you will proceed to trial without an attorney.

* * * * * * * *
THE COURT: This case is going to trial today. * * *
Do you want Mr. Rosenberg to sit with you and assist you while you represent yourself?

THE DEFENDANT: No, I don't want him to sit.
THE COURT: Well, then you will try the case yourself as your attorney.

THE DEFENDANT: You are saying it. I didn't say it.

* * * * * * * *
THE COURT: * * * We are about to select a jury in your case and I want to talk to you again and give you an opportunity to reconsider your position regarding whether or not you are going to defend yourself or have Mr. Rosenberg defend you.

THE DEFENDANT: * * * I don't wish to be represented by Mr. Rosenberg * * *. And as far as defending myself, I wouldn't know how to begin doing that.

* * * * * * * *
THE COURT: * * * So the trial is going to go forward. We are going to go into the other courtroom. We are going to select a jury. * * *
Mr. Rosenberg will be seated in the courtroom * * *
* * * * * * * *
THE DEFENDANT: I don't want the man to represent me, that's all I'm saying. * * * I don't want him to be my attorney.
THE COURT: He is not going to be your attorney. * * *
If you want to ask him anything, he will be there.
* * * * * * * *
THE DEFENDANT: From what I gather, like you are making me go to trial without a lawyer and if I need some service, you are making me, you know, accept his service which I don't want which I told you. Is that what you are saying?
THE COURT: That is what I am saying. * * *
If you don't want his services, then you will have to rely on your own services.

THE DEFENDANT: Well, I don't know nothing about no law. I can't represent myself, but I don't want his services.

* * * * * * * *
THE COURT: All right, Mr. McCombs, before we go selecting a jury do you want to confer with Mr. Rosenberg?
THE DEFENDANT: I don't.
* * * * * * * *
THE COURT: The law provides you are entitled to competent counsel and in the court's opinion you have competent counsel. If you see fit not to take *167 advantage of that counsel, that is your choice to make, Mr. McCombs. * * * But you are going to have to do the best you can as your own attorney.

* * * * * * * *
THE COURT: All right, we will recess and reconvene in the main courtroom to select the jury.
* * * * * * * *
THE COURT: * * * I also want to advise you that you have twenty challenges to any of the jurors that are selected. You have a right to strike any of those jurors for any reason that you feel is appropriate up to a maximum of twenty challenges. * * *
* * * * * * * *
THE COURT: I explained to you that you have the right to strike any of the jurors that are selected up to twenty. Do you understand that?
THE DEFENDANT: I don't understand. [Emphasis supplied.]
The trial judge went on to explain that the prosecutor and then defendant, if he wished, would make opening statements to tell the jury what each intended to prove; that the prosecutor would call witnesses and defendant would be given the opportunity to cross-examine them; that thereafter defendant would be able to put on witnesses in his own behalf; that he could also testify if he wished, though he had the right not to do so; that closing statements to the jury would be made by each side, and that the court would then instruct the jury. As to each phase of the trial as outlined by the trial judge, defendant responded that he did not understand.
Additional excerpts from the record follow:
THE DEFENDANT: I don't understand about what you just said is going to happen in the courtroom.
* * * * * * * *
THE COURT: Good afternoon, Ladies and gentlemen of the panel. We are about to select a jury in the matter of State v. Samuel McCombs.

Is the State ready?
MR. McGEARY: The State is ready.
THE COURT: Mr. McCombs, are you ready to proceed?
THE DEFENDANT: No, sir.
THE COURT: * * * I instruct the Sheriff to select fourteen jurors from the "B" Panel.
THE SHERIFF: Yes, your Honor.

*168 (The jury duly impaneled of fourteen jurors.)
* * * * * * * *
(Mr. McGEARY opens to the jury on behalf of the State.)
THE COURT: * * *
Mr. McCombs, I now offer you the opportunity to make an opening statement to the jury.
THE DEFENDANT: I don't know how to make an opening statement.
* * * * * * * *
THE DEFENDANT: I don't understand. I don't know how to make no opening statement. What am I supposed to say?
THE COURT: Then just say you have no opening statement.
* * * * * * * *
THE COURT: Let the record reflect that Mr. McCombs was offered an opportunity to address the jury by way of an opening statement. He indicates that he does not wish to do so and I will therefore consider that to be a waiver of his right to address the jury in the opening statement. [Emphasis supplied]
* * * * * * * *
A recess was then taken, following which the trial judge addressed defendant:
THE COURT: Mr. McCombs, during the recess I have considered what has taken place today so far starting with this morning when you made your request for an adjournment to get another attorney and my denial of that request. * * [I]n your best interests, Mr. McCombs, whether you believe it or not, understand it or not, the court is desirous of you having a fair trial and I don't think that you can have a fair trial by the conduct you have displayed so far, which apparently you attempt to display for the remainder of this trial.
Accordingly, the court has reached a conclusion that it should direct that Mr. Rosenberg conduct the defense of this case on your behalf. * * *
Although defendant continued to protest that he did not want the services of the public defender, the latter, pursuant to the court's order, proceeded to make an opening statement to the jury and to conduct the defense.
It is clear, nonetheless, that from the time jury selection began until the completion of the prosecutor's opening statement defendant neither defended himself nor was represented by counsel. While it is true that the public defender had been *169 directed to remain in the courtroom and render advice if requested by defendant, this would have been appropriate if defendant had chosen, albeit misguidedly, to defend himself. See State v. Sinclair, 49 N.J. 525, 552 (1967); State v. Davis, 45 N.J. 195, 199 (1965). But in the absence of defendant's self-representation, providing standby counsel did not constitute adequate and effective representation by counsel in the constitutional sense.
The trial judge here, faced with an uncooperative and obstructive defendant,
* * * should have ordered counsel to remain at the bar and participate as vigorously as circumstances permitted in the defense of the accused. Defense counsel should have been instructed to open to the jury, cross-examine the State's witnesses, call defense witnesses if available, close to the jury, submit appropriate requests to charge, and object to the charge, if necessary, [State v. Wiggins, 158 N.J. Super. 27, 31 (App.Div. 1978)].
The fundamental error in this case was not cured by the trial judge's belated overriding of defendant's protests and direction to counsel to undertake the defense. There remained a critical gap in the trial during which a jury was selected with defendant unrepresented and refusing to defend himself. The State argues in its brief that "[t]he United States Supreme Court has expressly held, however, that such a claim will not be when the defendant has waived his right to counsel," citing Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The reference to that case is inaccurate and misleading, since the principle enunciated there was simply that a defendant may voluntarily and intelligently elect to conduct his own defense, if he so chose, without having a lawyer forced on him, subject to the reservation (footnote 46 at 834, 95 S.Ct. 2525) that the trial judge might terminate self-representation by a defendant who deliberately engaged in serious and obstructionist misconduct. That is not the situation before us. We are not concerned here with a defendant who, in choosing self-representation, *170 "`knows what he is doing and his choice is made with eyes open.' Adams v. United States ex rel. McCann, 317 U.S. [269] at 279, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435." Faretta v. California, supra, at 835, 95 S.Ct. at 2541. Rather, we have an uncounseled defendant who, against his will, was compelled to fend for himself during a phase of the trial which could have an important bearing on its outcome.
Reversed and remanded for a new trial.