STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. SAMUEL LEE McCOMBS, DEFENDANT-RESPONDENT.

Argued May 8, 1979—Decided October 29, 1979.

*Mr. Albert G. Fredericks,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Fredericks,* of counsel and on the brief; *Messrs. John De Cicco* and *Edwin H. Stern,* Deputy Attorneys General, of counsel).

*Mr. Martin A. Bierbaum,* Designated Counsel, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Bierbaum,* of counsel and on the brief).

The opinion of the court was delivered by

CLIFFORD, J.

The judgment of the Appellate Division is affirmed substantially for the reasons set forth in that court's opinion. 171 *N.J.Super.* 161 (App.Div.1979). We add the following comments only for the purpose of emphasis.

■ When defendant rejected his assigned counsel, he also expressly refused to represent himself.[1] While it is clear, as we shall stress below, that an indigent defendant cannot have it both ways, it is equally clear that he cannot be left adrift during so crucial a phase of the trial as the jury selection process. In this case the lack of representation was properly—but belatedly—corrected by the trial court when, after jury selection and

---

[1] The trial court was plainly inaccurate when he told the prospective jurors that defendant had chosen to represent himself. By that point in the proceedings defendant had made it abundantly clear that he had no intention—indeed, was entirely incapable—of representing himself.

the State's opening, it required assigned counsel to deliver an opening statement and thereafter to participate in the trial on behalf of defendant, which he did with obvious vigor and considerable skill.

The Attorney General urges that

"[t]herefore defendant was without active representation only during jury selection. While defendant's peremptory challenges may not have been effectively utilized, see *R.* 1:8–3(d); *Wright v. Bernstein*, 23 *N.J.* 284, 293 (1957), it should be emphasized that chief responsibility for the conduct and control of jury selection rests with the trial court, and that it is the trial judge himself who conducts jury *voir dire*. *R.* 1:8–3(a); *State v. Manley*, 54 *N.J.* 259, 281 (1969). The State therefore submits that little actual prejudice inured to defendant as a result of the court's action.

The argument, with its implication that "actual prejudice" must be shown before the absence of representation rises to the level of a fatal defect in the criminal proceeding, inferentially denigrates the importance we have attached to the role of counsel, particularly in the process of choosing jurors. Recently this Court characterized jury selection as "an integral part of the process to which every criminal defendant is entitled." *State v. Singletary*, 80 *N.J.* 55, 62 (1979). See *State v. Jackson*, 43 *N.J.* 148, 157–58 (1964), *cert.* den., *sub nom. Ravenell v. New Jersey*, 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.2d* 572 (1965); *State v. Deatore*, 70 *N.J.* 100, 105–06, 358 *A.2d* 163 (1976).

The role of counsel in fully utilizing that process to obtain as impartial a jury as possible has likewise been stressed by the United States Supreme Court. In *Swain v. Alabama*, 380 *U.S.* 202, 219–22, 85 *S.Ct.* 824, 835–36, 13 *L.Ed.2d* 759, 772–74 (1965), the Court discussed the importance of the advantageous use of peremptory challenges to both sides in a criminal trial: [2]

In contrast to the course in England, where both peremptory challenge and challenge for cause have fallen into disuse, peremptories were and are freely used and relied upon in this country, perhaps because juries here are drawn from

---

[2]For a thorough history of peremptory challenges in this country, see 380 *U.S.* at 212–17, 85 *S.Ct.* at 831–34, 13 *L.Ed.2d* at 768–71.

a greater cross-section of a heterogeneous society. The voir dire in American trials tend to be extensive and probing, operating as a predicate for the exercise of peremptories, and the process of selecting a jury protracted. The persistence of peremptories and their extensive use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. Although "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] grant peremptory challenges," * * * nonetheless the challenge is "one of the most important of the rights secured to the accused * * *. *The denial or impairment of the right is reversible error without a showing of prejudice*" * * *. "For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose."

    *        *        *        *        *        *        *        *

[T]he question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. *It is well known that these factors are widely explored during the voir dire, by both prosecutor and accused* * * *. This Court has held that the fairness of trial by jury requires no less. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried. [380 *U.S.* at 218–21, 85 *S.Ct.* at 835–836, 13 *L.Ed.*2d 771–73; citations and footnotes omitted; emphasis supplied.]

See also *State v. Singletary, supra,* 80 *N.J.* at 81 (Handler, J., dissenting).

While it is now unmistakably clear that defendant need not show he was prejudiced by the absence of counsel, nevertheless we point to the circumstances of this case to illustrate the impact of defense counsel's absence on the composition of the jury which sat in judgment.[3] Defendant was tried on multiple charges including breaking and entering with intent to steal, assault with intent to kill, and assault and battery upon a police officer. Of the fourteen jurors selected to hear the case, one's home had (to use her expression) been "broken into and robbed,

---

[3]The transcript of the jury voir dire, not available to the court below, was furnished in compliance with our request at oral argument of this appeal.

vandalized"; a second knew one of the State's medical witnesses and had two cousins and a nephew in law enforcement, one of whom was a state trooper; a third had a brother-in-law who was a retired New York City detective and his home also had been broken into and materials stolen therefrom; a fourth had two "close friends" who were state troopers; and a fifth "had some breakings and enterings, assault and battery about five years ago." Each of these responded in the negative to the trial court's single exploratory question whether these factors "would have any bearing on your ability to fairly and impartially try this defendant in this case". Of these five who heard the testimony, four were members of the jury which ultimately decided the case.

While we do not suggest that the circumstances of the respective jurors recited above would, without considerably more development thereof, have afforded grounds for a challenge for cause, see *State v. Singletary, supra*, nevertheless we think it fair to say that any lawyer with the slightest criminal trial experience would have exercised one or more peremptory challenges or, at the very least, have sought further interrogation on and exploration of those jurors' states of mind. But even absent the aforementioned circumstances involving the experiences of these jurors, the Appellate Division correctly held that in allowing the jury selection phase of the trial to proceed while defendant was unrepresented, the trial court committed reversible error.

As the court below aptly pointed out, 171 *N.J.Super.* at 161, this "critical gap" in the trial was not bridged through any notion of defendant's "waiver" of his right to counsel. *Faretta v. California*, 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975), relied on by the state and by our dissenting colleagues, is not to the contrary. The distinguishing feature of *Faretta*, central to its analysis and holding, is made plain in the opening paragraph of the opinion, where the question before the Court was an-

nounced as "whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, *even when he insists that he wants to conduct his own defense.*" 422 *U.S.* at 807, 95 *S.Ct.* at 2527, 45 *L.Ed.*2d at 566 (emphasis added). In giving a negative answer to that question—entirely different from the issue before us—the United States Supreme Court emphasized that in waiving his right to counsel in favor of representing himself, a defendant must "knowingly and intelligently" relinquish that right. 422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581. Most assuredly McCombs neither "knowingly" nor "intelligently" gave up his right to counsel in order to represent himself, for he made it abundantly clear that self-representation was the last thing he wanted and assistance of counsel was the first. That it was McCombs' recalcitrance that led the trial court to permit, for a brief—but critical—span, assigned counsel's withdrawal from the case does not detract from the fundamental character of the error.

Finally, we return to our earlier observation that defendant cannot have it both ways—that is, he cannot refuse to represent himself but at the same time reject the services of assigned counsel. Our trial courts will continue to be controlled by trial judges, not by defendants. As we have already suggested, under the circumstances of this case the trial court should have ordered counsel to participate once it became apparent that the obdurate defendant was not going to conduct his own defense. The court below correctly cited *State v. Wiggins*, 158 *N.J.Super.* 27, 31, (App.Div.1978), for this proposition. The *Wiggins* court, in turn, looked to Chief Justice Burger for the proper policy evaluation when it said:

> There are higher values at stake here than defendant's right to self-determination. We find the analysis by Chief Justice Burger, concurring, in *Mayberry v. Pennsylvania*, 400 *U.S.* 455, 467–468, 91 *S.Ct.* 499, 27 *L.Ed.*2d 532 (1971), applicable.
>
> In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to

have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself. The value of the precaution of having independent counsel, even if unwanted, is underscored by situations where the accused is removed from the courtroom under *Illinois v. Allen* [397 *U.S.* 337, 90 *S.Ct.* 1057, 25 *L.Ed.2d* 353]. The presence of counsel familiar with the case would at the very least blunt Sixth Amendment claims, assuming they would have merit, when the accused has refused legal assistance and then brought about his own removal from the proceedings. [400 *U.S.* at 478, 91 *S.Ct.* at 506]

Affirmed.

PASHMAN, J., concurring.

I concur fully in the majority opinion. Defendant was denied the meaningful participation of an attorney throughout the entire jury selection process—a critical stage of the trial. In the absence of facts sufficient to prove waiver, his conviction cannot stand. *Gideon v. Wainwright,* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.* 2d 799 (1963).

An attorney can and should play a significant role in the selection of jurors. Counsel may suggest that the trial judge pursue lines of inquiry or ask particular questions during *voir dire.* The judge may permit counsel to "supplement the court's interrogation." *R.* 1:8–3(a); see *State v. Manley,* 54 *N.J.* 259, 281–283 (1969). The attorney may request that potential jurors be excused for cause. See *State v. Singletary,* 80 *N.J.* 55 (1979). Perhaps most importantly, he may exercise defendant's peremptory challenges. See *N.J.S.A.* 2A:78–7(c)–(e); *R.* 1:8–3(d). The skillful assertion of his client's rights is essential to empaneling an impartial jury. Thus, experienced counsel can provide invaluable aid during jury selection. The total deprivation of that assistance cannot be sanctioned.

Since the majority correctly recognizes that defendant need not demonstrate specific prejudice due to the denial of counsel, see *Gideon v. Wainwright,* I am troubled by the extensive

discussion of the jurors who sat at trial. The majority points out that several veniremen, while not necessarily subject to excusal for cause, see *State v. Singletary,* would have been likely subjects of peremptory challenges by an experienced attorney. Although this observation is accurate, its legal relevance is unclear. Once it is shown that defendant did not waive counsel and was denied the effective assistance of counsel during a critical stage of the trial, the inquiry is at an end. Any assessment of the jurors' impartiality is unnecessary. Apparently, the majority is merely illustrating the importance of counsel by examining the facts of this case. To this extent I agree.

Our holding today does not in any way affect the authority of the Court's decision in *State v. Singletary. Singletary* delineated "the bounds of reasonable discretion" of a trial judge when refusing to excuse a prospective juror for cause. 80 *N.J.* at 58. By ruling that a criminal defendant is entitled to the assistance of counsel during the selection of jurors, the Court today does not express any view regarding the proper disposition of challenges for cause.

If the defendant had received the assistance of counsel, and if challenges for cause had been made, there might have been an opportunity to apply the standards enunciated in *Singletary.* The majority notes that it "[does] not suggest that the circumstances of the respective jurors [involved in this case] would, without considerably more development thereof, have afforded grounds for a challenge for cause," citing *Singletary.* See *ante* at 377. While I agree with that statement, in the interest of clarity I would add that *Singletary* would not justify a summary or *per se* denial of such a challenge. When a possible source of prejudice is uncovered, "all doubts concerning a juror's 'sense of fairness or  .  .  .  mental integrity' " must be eliminated by further questioning and observation; otherwise, the venireman must be excused for cause. *Singletary,* 80 *N.J.* at 65 (quoting *State v. Jackson,* 43 *N.J.* 148, 160 (1964), *cert.* den. *sub nom.*

*Ravenall v. New Jersey,* 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.2d* 572 (1965)). The legitimacy of trial by jury is maintained only when prejudice is exposed or its appearance dispelled. Today's decision guarantees the assistance of counsel during that process.

SCHREIBER, J., dissenting.

The issues in this case are: (1) Whether the federal constitution's Sixth Amendment guarantee of the right to assistance of counsel is violated when the trial proceeds after an indigent defendant, who understands his rights, refuses representation by a competent assigned attorney and refuses to defend himself (assigned counsel being available for consultation), and (2) whether the trial court abused its discretion by not compelling assigned counsel to actively represent defendant over defendant's objection during selection of the jury.

Defendant was found guilty of various offenses involving a larceny and a robbery arising out of three incidents, all of which occurred on the same day. There was substantial evidence in the record from which the jury could have concluded, as it apparently did, that the following events occurred.

About 10:00 a. m. on July 12, 1976, defendant, who had decided to rob a house in Galloway Township, was driven by William Booze from Atlantic City onto Route 9 near a wooded area in the township. Defendant then walked to the home of a Mr. and Mrs. Farkas where he broke into a bedroom and stole some rings and other jewelry. Defendant returned to Route 9 where he met Booze. They returned to Atlantic City, where defendant learned that the rings were only costume jewelry.

They decided to return to seek a more lucrative haul. Booze drove defendant back to the same spot on Route 9. This time defendant broke into the house of Alfred Crosson. Mr. Crosson's father, who was bedridden with cancer, resided there with Mr. Crosson's 65-year-old sister, Harriet Kinsell. Only Mrs.

Kinsell and the father were home. Defendant came upon Mrs. Kinsell and savagely beat her with a tire iron that he had taken from Booze's car. He stole some $135 and Mr. Crosson's pocket knife.

The attack on Harriet Kinsell and the robbery were discovered shortly after. The police searched the surrounding area and came upon defendant. At first, defendant refused to stop walking and began to move at a fast pace. He finally yielded. A search of defendant uncovered two rings which were identified by Mrs. Farkas and the penknife which Mr. Crosson identified. Defendant said that the jewelry did not come from the house where the old woman had been beaten.

Mr. Richard I. Rosenberg of the Public Defender's Office had been assigned as defense counsel. When the case came on for trial on the morning of November 3, 1976, defendant stated for the first time that he did not desire Rosenberg as his counsel and that his mother was going to retain private counsel. The trial court refused to adjourn the trial and advised defendant that if Mr. Rosenberg did not try the case, then defendant could act *pro se* and have Mr. Rosenberg's advice. Defendant made it abundantly clear that he did not want Mr. Rosenberg as his counsel. Nor did he want his assistance or advice.

Defendant also refused to represent himself. While the jury was being selected, Mr. Rosenberg, as the court instructed, remained in the courtroom and was available for assistance. After the trial court explained fully to defendant his right to peremptory challenges in the jury selection, the court conducted the *voir dire* and on its own excused several jurors. Defendant did not exercise any peremptory challenges. After jury selection, the trial court ordered Mr. Rosenberg to proceed with the defense over defendant's objection.

Both the Appellate Division and the majority of this Court agree that the trial court properly exercised its discretion in refusing to adjourn the trial. Not only was defendant dilatory,

but there was no showing that he had retained a particular attorney or that defendant (or his mother) had the financial ability to compensate counsel. Further, the Appellate Division and the majority are satisfied that Mr. Rosenberg represented defendant thoroughly and competently. I am in complete accord with both conclusions.

The majority adopts the Appellate Division rationale that defendant was deprived of his right to the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution and by Art. I, par. 10 of the New Jersey Constitution. I do not agree with that proposition.

Once the trial was ready to proceed and the indigent defendant had rejected competent assigned counsel, we must ask if defendant was deprived of a residual constitutional right guaranteed by the Sixth Amendment.[1] That Amendment reads in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[2]

It is settled that, although the indigent defendant must be provided with counsel, *Gideon v. Wainwright*, 372 *U.S.* 335, 339–340, 342, 83 *S.Ct.* 792, 794, 795, 9 *L.Ed.*2d 799, 802, 804 (1963), he has no constitutional right to be provided with a particular attorney. *United States ex rel. Carey v. Rundle*, 409 *F.*2d 1210, 1215 (3 Cir. 1969), *cert.* den. *sub nom. Carey v. Run-*

---

[1] The Appellate Division analysis interpreted the United States Constitution and construed the New Jersey Constitution in accordance with that interpretation.

[2] The New Jersey Constitution contains comparable language. "In all criminal prosecutions the accused shall have the right . . . to have the assistance of counsel in his defense." *N.J.Const.* (1947), Art. I, par. 10.

The Sixth Amendment right to the assistance of counsel is applicable to the states by way of the Fourteenth Amendment due process clause. *Faretta v. California*, 422 *U.S.* 806, 818, 95 *S.Ct.* 2525, 2532, 45 *L.Ed.*2d 562, 572 (1975).

*dle*, 397 *U.S.* 946, 90 *S.Ct.* 964, 25 *L.Ed.*2d 127 (1970); *State v. Reddy*, 137 *N.J.Super.* 32, 35 (App.Div.1975). When an indigent defendant is afforded the services of competent counsel, it is evident that the constitutional mandate has been satisfied.

It is important to recognize that the defendant's Sixth Amendment right to counsel is personal to him. *Faretta v. California*, 422 *U.S.* at 820–821, 95 *S.Ct.* at 2533–2534, 45 *L.Ed.* 2d at 573–574.[3] *Cf. Gannett Co. v. DePasquale*, —— *U.S.* ——, ——, 99 *S.Ct.* 2898, 2909, 61 *L.Ed.*2d 608, 626 (1979), wherein the Supreme Court held that "the Sixth Amendment confers the right to a public trial only upon a defendant and only in a criminal case," and Justice Harlan's concurrence in *Estes v. Texas*, 381 *U.S.* 532, 588, 85 *S.Ct.* 1628, 1662, 14 *L.Ed.*2d 543, 584 (1965), where he wrote: "Thus the right of 'public trial' is not one belonging to the public, but one belonging to the accused, and inhering in the institutional process by which justice is administered."

An accused has a constitutional right to reject assigned counsel and represent himself. *Faretta v. California*, 422 *U.S.* at 807, 95 *S.Ct.* at 2527, 45 *L.Ed.*2d at 566. From a Sixth Amendment viewpoint, a defendant may refuse to accept the assistance of counsel. However, his refusal may not be accepted unless the relinquishment of the right was made knowingly and intelligently. *Johnson v. Zerbst*, 304 *U.S.* 458, 464–465, 58 *S.Ct.* 1019, 1023, 82 *L.Ed.* 1461, 1466–1467 (1938); *United States v. Fay*, 364 *F.*2d 219, 222–223 (2 Cir. 1966). It is important that when a defendant refuses legal assistance, he has been made aware of "the dangers and disadvantages" involved. *Faretta v. California*, 422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 582.

---

[3] In *Faretta*, all the justices agreed to that proposition. See dissenting opinion of Justice Blackmun in which he states, "I believe the specific guarantees of the Sixth Amendment are personal to the accused . . . ." 422 *U.S.* at 848, 95 *S.Ct.* at 2547, 45 *L.Ed.*2d at 589.

Once an effective waiver is made, the court must accede to that waiver if the defendant chooses to represent himself. This proposition follows because the Sixth Amendment has been held to grant him, albeit impliedly, the right to defend himself. *Faretta v. California*, 422 *U.S.* at 819–820, 95 *S.Ct.* at 2533, 45 *L.Ed.2d* at 572–573. Furthermore, the Sixth Amendment does not prevent the defendant from remaining silent throughout the trial by failing to invoke both his right to counsel and his right to defend himself. An indigent's constitutional right is to the assistance of assigned competent counsel, and no more. The majority apparently contends that defendant has not waived his constitutional right by insisting upon an attorney other than the assigned counsel. This presumes that defendant is entitled to the lawyer of his choice, which he is not, or that defendant did not truly understand the nature of his rights, which he did. If the majority contention is that defendant has a Sixth Amendment right to the services of assigned counsel despite objection, then it mistakenly presumes that this constitutional right to counsel may not be waived. As previously observed, the Sixth Amendment right to the assistance of counsel is personal and therefore waivable. No Supreme Court opinion has been brought to our attention which has ever held to the contrary. When a defendant dismisses assigned counsel and also declines to proceed *pro se*, he waives his Sixth Amendment right to the assistance of counsel.

Designation of counsel over the defendant's objection is not supportable by the constitutional right to the assistance of counsel for the very essence of the attorney-client relationship is absent. The Supreme Court's analysis in *Faretta* is predicated on this thesis. The Court commented:

> The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to

make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. Cf. *Henry v. Mississippi*, 379 *U.S.* 443, 451, 85 *S.Ct.* 564, 569, 13 *L.Ed.2d* 408; *Brookhart v. Janis*, 384 *U.S.* 1, 7–8, 86 *S.Ct.* 1245, 1248–1249, 16 *L.Ed.2d* 314; *Fay v. Noia*, 372 *U.S.* 391, 439, 83 *S.Ct.* 822, 849, 9 *L.Ed.2d* 837. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense. [422 *U.S.* at 820, 95 *S.Ct.* at 2533, 45 *L.Ed.2d* at 573]

A case strikingly similar to the one at bar is *United States ex rel. Testamark v. Vincent*, 496 *F.2d* 641 (2 Cir. 1974). There the defendant Testamark rejected the services of assigned counsel and refused to act as his own counsel. Assigned counsel was available throughout the trial, even though the defendant insisted that counsel not represent him, sit next to him or even be in the courtroom. The Second Circuit Court of Appeals held Testamark had not been denied effective representation of counsel. It wrote:

Finally, Testamark's actions at trial constituted a waiver of his right to counsel. He was given the choice between proceeding with appointed counsel, or proceeding *pro se*. He chose to do neither. . . .

Testamark's refusal to participate in the trial or confer with counsel were of his own choosing. The court gave him the opportunity to proceed with counsel or to represent himself. Actually the court gave him both because Lipton [assigned counsel] was available at all times. [496 *F.2d* at 643–644]

In *State v. Scarbrough*, 55 *Wis.2d* 181, 197 *N.W.2d* 790 (Sup. Ct.1972), the trial court had advised the defendant that he could keep assigned counsel, try the case alone, or have counsel sit with him and be available for assistance. The defendant continued to reject the services of the attorney. The trial proceeded over his protest that he was incapable of trying the case because he was not a lawyer. At defendant's request on two occasions during the trial the attorney sat with and assisted the defend-

ant. In both instances the defendant dismissed the lawyer after a short interval. The Supreme Court of Wisconsin affirmed the conviction. It held that ·

the defendant waived his right to counsel by dismissing his appointed counsel at the eleventh hour and by his rejection of the reasonable efforts of the court to furnish him with the assistance of counsel. We are of the further opinion that the trial court did not abuse its discretion in refusing to appoint another counsel and insisting that the trial proceed without counsel for the defendant. [55 Wis.2d at 188, 197 N.W.2d at 793–794]

In *Kates v. Nelson*, 435 *F*.2d 1085 (9 Cir. 1970), the defendant dismissed assigned counsel in the midst of trial. Although he advised the court that he did not wish to represent himself, counsel was permitted to withdraw and the trial proceeded. The court held that the defendant was not entitled to complain, for he had knowingly created the very situation of which he was complaining.

In *Missouri v. Gaye*, 532 *S.W.*2d 783 (Mo.Ct.App.1976), the defendant refused designated counsel and rejected the offer to try the case himself. The trial proceeded and the defendant was convicted. The Missouri Court of Appeals affirmed the conviction. After noting that the defendant was aware of his right to and need for counsel, it stated: "If appellant may ħe said to have been denied the benefit of counsel, it is a case of self-denial; if wounded by not having counsel actively defending him, it was a self-inflicted wound." 532 *S.W.*2d at 790.

This is not to say that a trial court may not exercise its discretion under certain circumstances and order that counsel defend an accused over his objection. Thus, where a defendant, having discharged his counsel, leaves the courtroom, it is desirable as a matter of policy ˙that counsel be ordered to proceed. See *State v. Wiggins*, 158 *N.J.Super*. 27 (App.Div.1978). Such policy grows out of the public interest in the integrity of the judicial process. *United States v. Taylor*, 569 *F*.2d 448, 452 (7

Cir. 1978), *cert.* den. 435 *U.S.* 952, 98 *S.Ct.* 1581, 55 *L.Ed.*2d 803 (1978). It is not founded on the accused's Sixth Amendment constitutional right. See *Faretta.* Nor is the effectuation of that policy contrary to the defendant's constitutional right, for its waiver does not necessarily "carry with it the right to insist upon the opposite of that right." *Singer v. United States,* 380 *U.S.* 23, 34–35, 85 *S.Ct.* 783, 790, 13 *L.Ed.*2d 630, 638 (1965).

Here the trial court's decision to permit defendant to proceed *pro se* with assigned counsel standing by cannot be said to have been so plainly improvident as to constitute an abuse of the broad discretion vested in it. *Cf. State v. Davis,* 45 *N.J.* 195, 198–199 (1965). Defendant had been made fully aware of his right to represent himself or have Mr. Rosenberg continue to represent him. The trial court patiently iterated and reiterated defendant's rights. A substantial part of the first 50 pages of the transcript are devoted to the court's explanation to defendant. Defendant made it clear that he did not want Mr. Rosenberg to represent him. He claimed that he did not understand what was going on,[4] but refused any assistance from assigned counsel. Under these circumstances, the trial court ordered defendant to act *pro se,* keeping Mr. Rosenberg available at all times.

The trial court explained to defendant that he had a right to strike any 20 jurors for any reason. When asked if he understood, defendant refused to respond. The trial court then conducted the *voir dire.* *R.* 1:8–3(a). Throughout, Mr. Rosenberg remained in the courtroom and could have advised or taken charge upon defendant's request.

The trial court on its own motion excused a juror who was acquainted with the son of the victim, Harriet Kinsell, and

---

[4]At the sentencing hearing, it was revealed that defendant had had eight prior convictions over a period of years.

another juror whose nephew was a friend of the prosecutor. It also excused a juror whose husband had been the victim of a robbery. Three other jurors were excused for cause. There is no evidence, and defendant makes no claim, that the jury was biased or prejudiced or that any juror should have been excused for cause. The verdict was just and clearly supported by the evidence,[5] and "a retrial would needlessly burden the administration of justice and would grossly disserve the interests of society." *State v. Singletary,* 80 *N.J.* 55, 65 (1979) (Jacobs, J., concurring).

I would reverse and remand the matter to the Appellate Division to consider the other issues raised by defendant.

Chief Justice HUGHES and Justice MOUNTAIN join in this opinion.

HUGHES, C. J. (retired), dissenting.

I concur in the dissenting opinion of Justice Schreiber. I agree with him that there existed, in fact and in law, a clear waiver of the Sixth Amendment constitutional right which defendant now advances to justify the new trial sought by him and approved by the majority.

The defendant's pretense that private counsel, at some later date, might be retained for him by a relative, was patently absurd and entirely unsubstantiated by the record. In short

---

[5]Defendant contends that certain other trial errors warrant a reversal of his conviction, but these claims were not argued or considered on the appeal before us.

The majority emphasizes that any lawyer would have exercised one or more peremptory challenges. Perhaps, but that position is irrelevant. Defendant in his *pro se* capacity had not exercised any peremptory challenges. Whether his technique was simply a refusal to participate or due to ineptness (having been given due warning), his waiver was effective. See *United States v. Rowe,* 565 *F.*2d 635, 637 (10 Cir. 1977), wherein the court stated that defendant cannot argue on appeal that *pro se* representation was ineffective assistance.

words, his tactic has successfully arrogated the management of the criminal calendar and, in that sense, the "integrity of the process" of the administration of justice referred to in *Mayberry v. Pennsylvania*, 400 *U.S.* 455, 468, 91 *S.Ct.* 499, 506, 27 *L.Ed.*2d 532, 541 (1971) (Burger, C. J., concurring); *State v. Wiggins*, 158 *N.J.Super.* 27, 32 (App.Div.1978). The "integrity of [that] process," 400 *U.S.* at 468, 91 *S.Ct.* at 506, 27 *L.Ed.*2d at 541, has thus been subverted to the disadvantage of both the need in the public interest for fair and speedy trial, and the continuing recognition by New Jersey courts (in which they have never been laggard) of constitutional rights on the part of those accused in whose behalf they are honestly and sensibly advanced.

With all respect to the views of the majority, the result leaves me with the uneasy feeling that an adroit and courtwise defendant, in a serious case of alleged criminal violence, has been successful in hoodwinking both trial and appellate courts, to the disadvantage of the true administration of justice.

*For affirmance*—Justices SULLIVAN, PASHMAN, CLIFFORD and HANDLER—4.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN and SCHREIBER—3.