229 N.J. Super. 566 (1989)
552 A.2d 218
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SYLVIA KORDOWER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1988.
Decided January 12, 1989.
*568 Before Judges SHEBELL, GRUCCIO and LANDAU.
William M. Kunstler, admitted pro hac vice, argued the cause for appellant (George F. Baier, Jr., attorney; William M. Kunstler and Ronald L. Kuby, on the brief).
Judith MacGowan, Assistant Prosecutor, argued the cause for respondent (John H. Stamler, Union County Prosecutor, attorney; Judith MacGowan, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*569 Defendant appeals her jury convictions, as well as four contempt convictions, following the lengthy trial of an indictment against her, during which she represented herself.
Defendant was arrested on July 8, 1983, immediately after she stabbed her attorney at his law office. On August 18, 1983, the Union County Grand Jury returned an indictment charging her with second-degree aggravated assault (N.J.S.A. 2C:12-1b(1)); third-degree aggravated assault (N.J.S.A. 2C:12-1b(2)); attempted murder (N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3); unlawful possession of a weapon (N.J.S.A. 2C:39-5d), and possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4d). Defendant entered a plea of not guilty to the indictment on September 16, 1983.
On September 30, 1983, an assistant deputy public defender, assigned to represent defendant, filed a notice of insanity defense and a notice of mental disease or defect. The attorney also filed motions for a change of venue, for additional discovery and to compel the prosecutor to allow defendant to be interviewed by the pretrial intervention (PTI) program. The case was pretried on October 3, 1983, and on October 21, 1983 an order requiring the prosecution to furnish additional discovery was entered. On November 4, 1983, the motions for change of venue and for a PTI interview were withdrawn.
On July 30, 1984, defendant filed pro se motions for substitution of attorney, for acquisition of the transcripts of all hearings and for a "mistrial" based on the grand jury proceedings. The motions were heard on August 9, 1984. The motion judge relieved the public defender as counsel for defendant but directed counsel to act as defendant's legal advisor. He denied defendant's other motions, including her request for an adjournment of the trial date set for September 4, 1984. On August 31, 1984, the criminal assignment judge heard and denied defendant's subsequent motion for an adjournment.
*570 Trial was held beginning on September 4, 1984 and ending on October 23, 1984. The first jury selected was dismissed when the court granted the State a one week adjournment from September 10 to September 17, 1984 to prepare to meet defendant's psychiatric defenses. Defendant appeared pro se with her assigned legal advisor. The jury found defendant guilty on all charges except the attempted murder. Defendant was held in contempt by the trial judge on four occasions, specifically on October 5, 10, 16 and 17, 1984.
On March 15, 1985, the trial judge merged the third-degree aggravated assault into the second-degree aggravated assault conviction and sentenced defendant to seven years' imprisonment on that conviction. He also merged the unlawful possession of a weapon conviction into the possession of a weapon for an unlawful purpose conviction and sentenced defendant to a concurrent term of four years on that conviction. Violent Crimes Compensation Board penalties totaling $2,100 were imposed.
On April 12, 1985, defendant, represented by counsel, appeared before the trial judge for sentencing on the contempt charges. The judge sentenced her on the first contempt to a $100 fine. On the second and third contempts he sentenced her to 60 days imprisonment on each to run consecutively to each other and consecutively to the sentence imposed on the jury convictions. He dismissed the fourth contempt charge.
Defendant now alleges:
POINT I: DEFENDANT WAS DENIED THE RIGHT TO COUNSEL.
A. THE DEFENDANT DID NOT WAIVE THE RIGHT TO COUNSEL.
B. DEFENDANT DID NOT HAVE EFFECTIVE ASSISTANCE OF COUNSEL.
1. THE COURT SHOULD HAVE APPOINTED A LAWYER TO REPRESENT DEFENDANT.
2. THE LEGAL ADVISOR DID NOT SATISFY THE REQUIREMENT OF EFFECTIVE ASSISTANCE OF COUNSEL.
C. THE COURT SHOULD HAVE GRANTED THE DEFENDANT AN ADJOURNMENT TO SEEK SUBSTITUTE COUNSEL.

*571 POINT II: THE COURT ABUSED ITS DISCRETION IN EXCLUDING AND/OR LIMITING RELEVANT EVIDENCE WHICH WAS CRUCIAL TO THE DEFENSE.
POINT III: THE DEFENDANT WAS DENIED A FAIR AND IMPARTIAL TRIAL.
A. THE JUDGE WAS NOT IMPARTIAL DURING THE TRIAL.
B. THE PROSECUTOR'S CONDUCT THROUGHOUT THE TRIAL WAS IMPROPER AND PREJUDICIAL.
POINT IV: THE COURT ERRED IN ITS DETERMINATION AND IMPOSITION OF A CUSTODIAL SENTENCE.
A. THE COURT IMPROPERLY FOUND THAT THE AGGRAVATING FACTORS OUTWEIGHED THE MITIGATING FACTORS.
B. THE IMPOSITION OF A CUSTODIAL SENTENCE CONSTITUTED A SERIOUS INJUSTICE.
POINT V: DEFENDANT WAS DENIED DUE PROCESS IN THE ADJUDICATION OF AND SENTENCING FOR CONTEMPT.
A. DEFENDANT WAS ENTITLED TO NOTICE AND A HEARING BEFORE BEING ADJUDGED IN CONTEMPT.
B. DEFENDANT WAS ENTITLED TO A HEARING ON MENS REA EVEN IF SHE WAS IN DIRECT CONTEMPT OF COURT.
C. THE COURT ACTED ARBITRARILY AND ABUSED ITS DISCRETION IN IMPOSING EXCESSIVE SANCTIONS FOR CONTEMPT.
A detailed recitation of the facts surrounding the indictment is unnecessary in light of our determination that defendant was denied her constitutional right to counsel. Suffice it to note that defendant interposed an insanity defense and at trial produced a psychiatrist, who testified that at the time of the incident defendant was suffering from depression, and was in a vulnerable state of mind as a result of years of having been subjected to extreme mental and physical stress. Defendant also suffered from various health ailments, which the psychiatrist believed contributed to her stress. The psychiatrist maintained that defendant's condition was further aggravated by several adverse rulings in her protracted matrimonial litigation which she received during the days preceding the attack upon her attorney. These events precipitated "an acute psychotic breakdown." The psychiatrist asserted that defendant had no intent to harm her attorney and that at the time of the acute psychosis she could not differentiate between right and wrong *572 or understand the nature and quality of her acts. He did not believe that she was even aware of what she was doing.

THE RIGHT TO COUNSEL
Defendant contends that she was denied her Sixth Amendment right to counsel when, after she became dissatisfied with her assigned public defender, the court refused to appoint another lawyer and refused her request for an adjournment to obtain substitute private counsel. She insists that her decision to proceed pro se was not a waiver of her right to counsel and that the appointment of a legal advisor did not satisfy the requirement of effective assistance of counsel.
Following the pretrial proceedings of October 3, 1983, the assistant public defender assigned to defendant's case communicated to defendant a plea offer made by the State. Defendant rejected the offer and stated she wanted to go to trial. A trial date of December 5, 1983 was set. However, nothing further transpired to defendant's knowledge until she received a mailgram, possibly sometime in July 1984, in which the public defender indicated that she had tried to call and that defendant should call her. Upon contacting her attorney, defendant was informed that a peremptory trial date of September 4, 1984 had been set.
On August 9, 1984, defendant appeared before the motion judge seeking a substitution of attorney. She explained that the public defender had not found out the names of witnesses or done anything to prepare the case for trial. Defendant stated that the public defender's "only goal, which was way back in September, was that there was one doctor in the State of New Jersey and only one doctor who was fit to examine me or who would." Defendant objected to being examined by "any doctor who has any connection with the State of New Jersey" and thus did not want to see any of the doctors used by the Public Defender's Office. Defendant stated that the attorney *573 was hostile to her and had tried to coerce her to plead guilty and "go to jail for seven years."
The motion judge advised defendant that the trial date of September 4, 1984 was firm, but that if she had the funds to hire her own attorney who would be prepared to try the case on that date, he would allow her to substitute counsel. He cautioned her that he would not allow counsel to appear on August 31 and ask for a month adjournment. Defendant stated that if she could not find anyone, she preferred to represent herself than to go to trial with the public defender presently assigned.
The judge advised her that this was a "[c]riminal matter with serious implications" and that because she was charged with a second-degree offense there was a presumption of incarceration. He did not explain to her what the term of incarceration might be. The judge further explained:
And I want you to know that the trial of a criminal matter is something that is involved, it calls for knowledge of people who have been involved in the trial of criminal matters for a number of years. I'm concerned whether you possess the expertise  and I don't know the full extent of what you've been through in court with your own case. But I'm concerned that any lay citizen would possess the expertise in order to handle a matter before a jury.
He also asked:
Have you had any legal education?
THE DEFENDANT: I have had no legal education, I have no legal knowledge, and I am simply, as they say, winging it.
THE COURT: Well, do you think that's fair to yourself?
THE DEFENDANT: It's much fairer than proceeding with an attorney that is not on my side. There is no way that I will be represented or will consent to, if your Honor pleases, by [this attorney] or at this moment anyone from the public defender's office.
The judge inquired as to whether defendant would proceed pro se or with the assigned assistant deputy public defender if she could not obtain private counsel. Defendant stated:
Your Honor, I think that I have no choice but to throw myself at the mercy of the court and represent myself pro se, as inept as I am at this, as I cannot have an association with an attorney who has had a tunnel vision and simply have me accept and go to jail for seven years.
She insisted that "[u]nder no condition" would she proceed with her present attorney. The judge accepted this as defendant's *574 decision to represent herself. He denied her request for an adjournment to prepare the case and directed that the same assistant deputy public defender serve as her legal advisor only and not as her attorney from that time forward. The court and the public defender agreed that such designation would prevent the defendant from availing herself of the resources of the Public Defender's Office for research, investigation, service of process and the like.
Defendant asked that someone other than that attorney serve as advisor, but the judge indicated that it was not within his power. Defendant also asked about obtaining an attorney from the pool of attorneys who do work for the Public Defender's Office, but the judge advised her to contact the Deputy Public Defender for Union County to see whether she qualified. The judge ordered defendant to submit her psychiatrist's report to the State by August 24.
On August 31, 1984, defendant appeared before the criminal assignment judge and again sought an adjournment in order to obtain counsel of her own choosing. The judge denied defendant's request, and stated that he believed the motion judge must have recommended that defendant keep her public defender but that since she had freely chosen not to, trial would be held on September 4. He noted that a lawyer had called his chambers about representing defendant but was told that he had to be ready by September 4.
The case was assigned for trial on September 4, on which date defendant asked for permission "to interview three attorneys from the pro bono pool that's provided by the Bar Association." The judge advised her that there was no pool to handle criminal cases in Union County. Defendant asserted that she had no knowledge of criminal law and would not participate or submit a psychiatrist's report until she received effective representation. Defendant represented that since her previous request for substitute counsel had been denied, she had actively sought representation and that one lawyer, who was willing to *575 take her case for a very low retainer fee, had called the assignment judge, but when told that there would be no adjournment, could not drop his other cases to take defendant's. She represented that another attorney had initially agreed to take the case but withdrew because he had a large case to handle at the time. Despite defendant's objections to proceeding without counsel of her choice, the judge directed the trial to begin.
On September 10, 1984, after the first jury had been selected, defendant submitted a report from a psychiatrist. The State arranged for defendant to be seen by a psychiatrist and was granted an adjournment for one week. The first jury was discharged and a second jury was later selected to hear the trial which resumed on September 17, 1984.
Both the Sixth Amendment, applicable to the states through the Fourteenth Amendment, and the New Jersey Constitution, Article I, par. 10, guarantee an accused the right to the assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 2062-63, 80 L.Ed.2d 674 (1984); Gideon v. Wainwright, 372 U.S. 335, 339-42, 83 S.Ct. 792, 793-96, 9 L.Ed.2d 799 (1963); State v. Fusco, 93 N.J. 578, 583 (1983); State v. Sugar, 84 N.J. 1, 15-16 (1980).
As noted in Sugar:
Those guarantees recognize the obvious but important truth that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty * * *." Johnson v. Zerbst, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938); see Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971). Without the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence. Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932); see Argersinger v. Hamlin, 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972). Trained counsel is also necessary to vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles. See State v. McCombs, 81 N.J. 373 (1979); State v. Stein, 70 N.J. 369, 384 (1976). Where the doctrine supporting those rights "has any complexities the untrained defendant is in no position to defend himself * * *." Rodriguez, supra, 58 N.J. at 295 [84 N.J. at 16.]
*576 The right of a defendant to obtain counsel of his own choice is not absolute and "`cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice and deprive such courts of the exercise of their inherent powers to control the same.'" State v. Furguson, 198 N.J. Super. 395, 401 (App.Div.), certif. den. 101 N.J. 266 (1985), quoting Smith v. United States, 288 F. 259, 261 (D.C. Cir.1923). We have previously noted that an indigent defendant "has no right `to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented'...." State v. McCombs, 171 N.J. Super. 161, 165 (App.Div. 1978), aff'd 81 N.J. 373 (1979), quoting State v. Rinaldi, 58 N.J. Super. 209, 214 (App.Div. 1959), cert. den. 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 238 (1961). As stated in Wheat v. United States, ___ U.S. ___, ___, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140, 148 (1988), "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." See Penson v. Ohio, ___ U.S. ___, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (regarding right to counsel on appeal). In any event, "[a] defendant desiring to exercise the right to choose his own counsel must proceed to do so with reasonable diligence." McCombs, 171 N.J. Super. at 165. See also Furguson, 198 N.J. Super. at 401.
We need not consider the questions of whether this defendant had a reasonable basis to seek the discharge of her appointed public defender or whether the court abused its discretion and violated defendant's constitutional right to counsel of her own choice by denying her request for an adjournment in order to permit such counsel to enter the case. We are mindful of the admonition of our Supreme Court in State v. McCombs, 81 N.J. 373, 378 (1979) that an indigent defendant "cannot have it both ways  that is, he cannot refuse to represent himself but at the same time reject the services of assigned counsel. Our trial courts will continue to be controlled by trial judges, not by defendants." However, nothing in *577 McCombs can compel a departure from the rule in Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975), that before a defendant may be permitted to represent himself or herself, there must be a knowing and intelligent waiver of the right to counsel.
Further, we find nothing in McCombs to suggest that such a course is desired. This State's decisions make it clear that our courts will indulge every reasonable presumption against waiver of so fundamental a right as the right to counsel, Fusco, 93 N.J. at 591; State v. Guerin, 208 N.J. Super. 527, 533 (App.Div. 1986), and that whether a defendant's waiver of this right has been made knowingly and intelligently can be determined only after the trial court has conducted "a penetrating and comprehensive inquiry of the defendant...." Guerin, 208 N.J. Super. at 535. See also State v. Lach, 213 N.J. Super. 466, 470 (App.Div. 1986); State v. Cole, 204 N.J. Super. 618, 625 (App.Div. 1985); State v. Abbondanzo, 201 N.J. Super. 181, 184 (App.Div. 1985).
The court must make certain by direct inquiry on the record that defendant is aware of "`the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" Cole, 204 N.J. Super. at 623, quoting Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). See also Lach, 213 N.J. Super. at 470-71; Guerin, 208 N.J. Super. at 533.
As stated in Faretta:
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. [269], at 279, 87 L.Ed. 268, 63 S.Ct. 236 [242], 143 A.L.R. 435 [(1942)]. [422 U.S. at 835, 95 S.Ct. at 2541].
*578 Of particular importance in this case is the proposition that the determination of the validity of a waiver of the right to counsel "must be based upon the particular facts and circumstances of each case, including the background, experience and conduct of the defendant." Guerin, 208 N.J. Super. at 533. Accord Cole, 204 N.J. Super. at 624. See generally Annotation, "Accused's Right to Represent Himself in State Criminal Proceedings  Modern State Cases," 98 A.L.R.3d 13 (1980).
In Abbondanzo, defendant represented himself without having been advised of the "incarceration exposure" for the disorderly persons offense with which he was charged. We reversed his conviction, holding that in any case where a jail sentence may be imposed, "the judge must first advise a pro se defendant of such incarceration exposure before determining there has been an effective waiver of counsel. [Footnote omitted]." 201 N.J. Super. at 185.
Although the motion judge here cautioned the defendant and questioned her regarding her decision to proceed pro se, the inquiry and admonition was not sufficient. The record does not reflect that the court fully explained to defendant the serious nature of the charges. He did not advise the defendant of the maximum sentence for each of the offenses or the possibility of consecutive sentences. The record does not show that defendant was aware of the maximum aggregate sentence she could receive. The court could not adequately fulfill its obligation by merely advising defendant that she was charged with a second degree offense for which "it is presumed that [anyone convicted] will be incarcerated."
In Guerin, defendant's convictions were reversed because the record did not reveal that the trial court made the required inquiries to determine the validity of defendant's waiver of his right to counsel. We there recommended that on retrial, "the trial court should advise defendant, in unequivocal terms, both of the technical problems he might encounter in acting as his *579 own attorney and the risks he takes if his defense efforts are unsuccessful." 208 N.J. Super. at 536.
Further, while there was some inquiry of defendant's proposed temporary insanity defense, the judge made no suggestions of other possible ways defendant could defend the charges. Although he cautioned her that it might not be wise for her to represent herself because she lacked the necessary training and expertise, the warning was not as specific as required pursuant to Guerin.
In United States v. Welty, 674 F.2d 185, 188 (3d Cir.1982), the court noted:
The district court judge should tell the defendant, for example, that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused. [Emphasis supplied].
Accord McMahon v. Fulcomer, 821 F.2d 934, 945 (3d Cir.1987). The trial judge in Welty had told defendant that it was "inadvisable" for him to represent himself, nonetheless, the court of appeals found the judge's inquiry insufficient to determine whether the accused "truly understood the implications of proceeding pro se" and reversed his conviction. 674 F.2d at 189-92, 194.
An example of a comprehensive inquiry may be found in U.S. v. McDowell, 814 F.2d 245, 251-52 (6th Cir.), cert. den. ___ U.S. ___, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), where the court, although not reversing, set out in the appendix the model inquiry to be used in the future by federal district judges in that circuit.[1] Following the appropriate colloquy, the trial judge is required to make an express finding that the defendant has knowledge of the relevant facts and has voluntarily waived *580 his right to counsel before allowing him to proceed pro se. Id. at 250, 252. No such finding was made in this case.
The record to our view does not support a finding that defendant validly waived counsel. Although she had some experience in court through her lengthy matrimonial litigation, she had no previous experience in criminal law and she openly declared that she was "inept." Her case is distinguishable from State v. Cole, 204 N.J. Super. at 625, where despite the trial judge's failure to advise defendant of the important factors, the court ruled "in light of defendant's background, experience and familiarity with the criminal law, we conclude that his was a voluntary, competent and intelligent waiver of counsel." It is abundantly clear from the record that defendant was incapable of properly defending herself against these serious charges and that she suffered prejudice as a result. Even for experienced counsel the laying of a proper foundation for the psychiatric testimony required for her defense would have raised tactical and evidential problems as to how best to corroborate the history given to her examining expert. With defendant acting in the dual capacity of witness and attorney the task was beyond her grasp, particularly in view of her understandable emotional involvement in the trial.
Further, it is questionable whether defendant was unequivocally waiving her right to counsel. She persisted in her requests for counsel while refusing to be represented by the assistant deputy public defender. We recognize the difficult position a trial court is put in where the waiver of counsel is intentionally put in terms that are less than unequivocal. See, e.g., United States v. Oakey, 853 F.2d 551, 553 (7th Cir.1988); Tuitt v. Fair, 822 F.2d 166, 174-77 (1st Cir.1987), cert. den. ___ U.S. ___, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). See generally Annotation, supra, 98 A.L.R.3d 13 (1980).
In Tuitt, the defendant indicated that he would represent himself rather than go forward with his assigned counsel. Tuitt, however, insisted that he did not want to proceed pro se *581 and was not waiving his right to counsel. The trial judge denied Tuitt's motion to proceed pro se because it was equivocal and directed trial to begin with defendant represented by his assigned counsel. The Court of Appeals upheld the ruling of the Massachusetts Supreme Judicial Court that a defendant's right to proceed pro se may be conditioned on an unequivocal waiver of the right to counsel, although the federal court pointed out that "the trial court could have adopted alternative courses...." 822 F.2d at 177.
In United States v. Gallop, 838 F.2d 105, 107 (4th Cir.1988), cert. den. ___ U.S. ___, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988), defendant, after the court denied his request for a new attorney, "indicated that he had no choice but to represent himself." The court, after noting that the trial judge should not force a defendant to cooperate with an attorney if he is adamant that he cannot proceed with his appointed counsel, stated that "[t]he proper procedure, though not necessarily the exclusive one, is to order the defendant, as the district court had done in the instant case, to proceed pro se but also to order the appointed counsel to remain as a backup." Id. at 110. Here, we are not convinced that the retaining of appointed counsel as legal advisor provided this defendant with the required guarantee of adequate assistance of counsel. Cf. Ibid.
We also note that in this case defendant's purported waiver of counsel was somewhat equivocal on August 9, 1984 and even more so on September 4, 1984. However, we need not decide the issue of whether her words and conduct constituted a waiver. See United States v. Denno, 348 F.2d 12, 16 (2d Cir.1965), cert. den. 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). The Law Division's failure to conduct a comprehensive inquiry sufficient to determine whether the waiver was knowing and intelligent requires reversal of defendant's jury convictions as she was denied the right to effective assistance of counsel.

*582 THE CONTEMPTS
Defendant maintains that she was denied due process by the manner in which she was adjudicated guilty of and sentenced for contempt. The first of the four contempt incidents occurred on October 5, 1984, when defendant arrived at 10:06 a.m. when trial was to commence at 9 a.m.. Defendant maintained that she and other people who were with her the day before heard that court would begin at 10 a.m.. The transcript of the preceding day indicates that the judge said, "[s]ee you people tomorrow morning at 9 o'clock."
The second incident occurred on the 10th when defendant refused to stop talking and proceed after the judge had issued his ruling. When she refused to continue questioning the witness, the judge recessed the court. After the recess, he again directed her to proceed to question the witness. Instead, she insisted on commenting about the judge's earlier remarks. The judge explained that she was demeaning the court and that his calling a recess was a way of avoiding having her removed from the courtroom. Defendant continued:
MS. KOWDOWER: Your Honor, I would prefer to be held in contempt of court and be able to speak 
THE COURT: I think you'd love to be held in contempt of court. Then you'd be a martyr, you'd be a Joan of Arc. You have already been held in contempt once and I'll deal with that when this case is over. And I hope I don't have to hold you in contempt again, I really do.
Let's proceed.
MS. KORDOWER: Your Honor, I must reply to what you are saying. I'm not getting a chance to reply.
THE COURT: This court is in recess. The next time that happens  all right. You're in contempt of this Court.
The judge explained that the contempt was "[f]or refusal to stop speaking when I have asked you to go into the questions."
The third incident occurred on October 15. The prosecutor was cross-examining defendant regarding a press release defendant had allegedly contributed to regarding the proceedings. A portion of the colloquy follows:
THE COURT: It's obvious, Miss Kordower, you would like your case to be aired on the television?

*583 MS. KORDOWER: Your Honor 
THE COURT: The only way that would have been aired if there was a TV camera in this courtroom, in this courtroom, which could be permitted under some circumstances.
MS. KORDOWER: You're giving the jury the wrong impression, your Honor.
THE COURT: You will desist from speaking, once I say the jury goes in the juryroom.
MS. KORDOWER: This is really a lynching, it really is. I would like to present 
(The following is without the presence of the jury.)
THE COURT: You'll sit for a moment, sit. I hold you in contempt of court, this is the third time in the trial, by saying this is a lynching while the jury was leaving.
As noted earlier, the fourth contempt charge was dismissed and need not be considered. When the judge sentenced defendant on these contempt charges, he explained that he viewed the incidents as contempt in the face of the court and that defendant therefore had no right to a hearing as to guilt. The court acknowledged defendant's right to speak with respect to sentence and as to anything "that would mitigate the circumstances." Defendant's counsel for the contempt hearing maintained that defendant was entitled to a hearing both as to the facts and mitigation. Although counsel maintained that defendant had a right to be tried before a different judge, he appears to have conceded that she waived that right.
The judge permitted the defense to respond to the charges. With respect to the first contempt, counsel represented that "if we were permitted to have a hearing on this, we would bring in witnesses who would testify that after the Court Reporter left, you made a remark about resuming court at ten o'clock." The judge affirmed his previous finding and sentenced defendant to a $100 fine.
Responding to the second contempt charge, defense counsel took the meritless position that the trial judge could not hold defendant in contempt after stating that court was in recess. However, in mitigation, he accurately pointed out the difficulty defendant had in trying such a long and complex case pro se *584 and the frustration she was feeling in not being able to present crucial aspects of her defense.
On the third charge, defense counsel conceded that the remark "this is really a lynching," constituted contempt of court, and defendant apologized for the remark. Both defendant and her counsel argued in mitigation that the remark followed her testimony, when she was again feeling stymied in terms of her ability to get what she believed was relevant evidence before the jury.
We reject defendant's contention that she was entitled to notice and a hearing before being adjudged guilty of contempt. R. 1:10-1 provides: "Contempt in the actual presence of a judge may be adjudged summarily by the judge without notice or order to show cause. The order of contempt shall recite the facts and contain a certification by the judge that he saw or heard the conduct constituting the contempt." Contempt in the face of the court is direct contempt and may be dealt with summarily without the type of notice and hearing required for other acts of contempt under R. 1:10-2. In re Yengo, 84 N.J. 111, 121 (1980), cert. den. 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); Matter of DeMarco, 224 N.J. Super. 105, 115-16 (App.Div. 1988).
The incident in which defendant arrived late for trial on October 5, 1984 may in some circumstances be viewed as indirect contempt. However, in Yengo, the Court held that the unexcused absence of an attorney from trial may be classified as direct contempt where the attorney refuses to explain his absence or where he "offers an insulting, frivolous, or clearly inadequate explanation...." Id. 84 N.J. at 126-27. On the other hand, "[i]f there is some evidence of the adequacy of the explanation, the judge should characterize the matter as an indirect contempt and proceed by order to show cause returnable before another judge." Id. at 127.
Defendant's explanation in this case, if true, would be adequate to render her not guilty of contempt. The judge *585 disbelieved her explanation in light of his knowledge that he had said court would begin at 9:00 a.m.. He would also have disbelieved any witnesses she produced to testify that he said 10 a.m.. Finding defendant's explanation so clearly inadequate, the judge could view her tardiness as a direct contempt. Id. at 126-27. While defendant was subjected to no greater sanction than would have been appropriate under R. 1:2-4 for failure to appear, we are persuaded that the best practice would have been to proceed under this administrative rule, rather than direct contempt. See Matter of Milita, 195 N.J. Super. 1 (App. Div. 1984). The remaining incidents were clearly direct contempts.
Defendant asserts that she was entitled to a hearing on whether she acted with criminal intent even if it is accepted that direct contempt occurred. Even where the contempt is direct, the defendant has a right to a hearing before the same judge at which "there must be proof of criminal intent to establish contempt as a public offense." Yengo, 84 N.J. at 128. "[P]rocedural due process is satisfied by a hearing in which the alleged contemnor is given every opportunity to place his position before the trial judge before whom the conduct occurred." DeMarco, 224 N.J. Super. at 121. See also Yengo, 84 N.J. at 127. The April 12 hearing satisfied these requirements. Both defendant and her attorney were afforded the opportunity to speak concerning defendant's intent and any other matters they felt the judge should consider.
Defendant urges that the sentences imposed for contempt were excessive. On the two other contempt charges, the judge sentenced defendant to consecutive 60-day terms to run consecutively to the sentence she was then serving.
In imposing sentence on the contempt charges, the judge, as with any other sentencing, was required to consider "the whole person." See State v. Sainz, 107 N.J. 283, 293 (1987); State v. Marzolf, 79 N.J. 167, 180 (1979). It was proper for the trial judge to consider defendant's character and attitude as exhibited *586 at trial in determining what sentence was appropriate. He was entitled to consider the contempts in context and decide that her conduct required strong punishment. We are not persuaded that the sentences imposed are so harsh as to represent an abuse of discretion.
We reverse defendant's convictions under Indictment No. 880-08-83 and remand for a new trial. We affirm defendant's contempt convictions of October 10 and October 15, 1984 and the sentences imposed on these two contempts. The contempt conviction of October 5, 1984 is set aside. The order shall be amended to reflect the imposition of a $100 penalty under R. 1:2-4(a).
NOTES
[1] We hereby commend to the attention of the Administrative Office of the Courts the suggestion that an appropriate written form be prepared and distributed to trial judges for use in proceedings where defendants seek to waive their right to counsel.