**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0565-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BYRON D. KEMP, a/k/a
BYRON D. KEMP, JR.,

    Defendant-Appellant.

_____

Submitted February 28, 2022 – Decided March 8, 2022

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 18-11-1495.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Byron D. Kemp appeared as a self-represented litigant during his jury trial on drug and weapons offenses. He appeals from his convictions for second-degree possession of a controlled dangerous substance with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2); third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1); and fourth-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(3), and from the aggregate twelve-year sentence imposed by the court. He argues his conviction should be reversed because he did not knowingly, voluntarily, and intelligently waive his right to counsel, and he contends his sentence should be vacated because the State failed to timely move for an extended term. We reverse his conviction because the record does not support the court's determination defendant knowingly and intelligently waived his right to counsel, and we remand for further proceedings consistent with this opinion.

I.

Prior to his trial, defendant was represented by three different attorneys following his indictment on multiple drug and weapons offenses. Four weeks before the scheduled trial date, defendant informed the court he fired his then-counsel, he did not intend to hire new counsel, and he "wish[ed] to proceed on [his] own."

2

The court explained it was obligated to "make certain inquiries" of defendant before he could represent himself. The court asked defendant why he "want[ed] to represent [him]self?" and defendant replied, "I can't represent myself." The court asked defendant why he fired his counsel, and the court noted defendant had two prior attorneys who had represented him in the matter. Defendant said he did "not wish to represent himself" but that he was dissatisfied with his counsel's failure to obtain discovery due from the State even though the trial was scheduled.

The State informed the court all discovery materials in its possession had been provided to defendant's counsel, but then incongruously explained there was a recorded statement on a disc that had not been turned over and transcripts it planned to order and supply to defendant. When asked by the court if he wished to continue to have his counsel represent him if the State provided the outstanding discovery, defendant explained his "people do not wish to pay any more money" to the attorney and they refused to pay the balance of the retainer owed to the attorney.

Defendant advised the court he did not want the services of the Office of the Public Defender "at this point," and the court explained it would not "provide an attorney for [defendant] on the morning of the trial." Defendant responded,

3

"That's understandable," and said all he was "seeking at this point" was the discovery in the case that was scheduled for trial and in another case pending against him.

The court and defendant had the following colloquy about whether defendant's receipt of the requested discovery would affect his decision to proceed without counsel.

> THE COURT: Now, let's assume you have your discovery, do you want a public defender?
>
> DEFENDANT: No, I don't.
>
> THE COURT: Do you wish to represent yourself then?
>
> DEFENDANT: I wish to make my own presentment, to represent myself, I am myself.

The court then asked defendant additional questions and became frustrated by what it characterized as defendant's "stonewalling."

> THE COURT: How old are you, Mr. Kemp?
>
> DEFENDANT: I'm the oldest man on the planet, Your Honor.
>
> THE COURT: I don't think that answers the [c]ourt's question. How old are you? When were you born?
>
> DEFENDANT: (No response.)

A-0565-19

THE COURT: You can stonewall the [c]ourt, if you wish, Mr. Kemp, it makes no difference to this judge. But I'm telling you that, as a matter of advice, that if you're going to trial without an attorney, it can be a great burden for someone without a legal education. That's up to you. And whether you have an attorney or you don't really depends upon what you tell me. And if you stonewall the [c]ourt, you'll just simply go to trial on your own without the help or advice of anyone. So it's up to you. How old are you?

DEFENDANT: I haven't had any help or advice thus far, Your Honor. This is the point I'm trying to make to the Court.

THE COURT: So the question is a simple one. How old are you? And you haven't answered it. How far did you go in school?

DEFENDANT: Your Honor, this – that information is already available to the [c]ourt. You already have a record of all of that.

THE COURT: Do you have any family to rely on to give you any advice?

DEFENDANT: I'm incarcerated, Your Honor.

THE COURT: Do you speak to your family on the phone or your friends, anyone that you can rely on for advice?

DEFENDANT: For advice?

THE COURT: Yes.

DEFENDANT: No.

5

The court also mentioned weapons charges in the indictment against defendant and the court inquired as to defendant's knowledge of the penalties.

> THE COURT: You're charged with unlawful possession of a weapon, possession of a weapon or a firearm in a drug crime and you're charged with being a certain person not to possess a weapon. Which means all the State has to prove is that you had a weapon, that is a firearm, and that you had previously been convicted of a serious offense. Do you understand what those charges mean?
>
> DEFENDANT: No.
>
> THE COURT: Do you know what the penalty is if you are convicted on those charges?
>
> DEFENDANT: No.

Rather than explain the charges and their attendant penalties, the court ended its questioning of defendant and found he was "for whatever reason, stonewalling . . . and making it more difficult for the [c]ourt to afford him the best possible fair trial." The court relieved defendant's then-counsel of his representation of defendant and ordered the State to provide a complete copy of the discovery to defendant at a hearing the court scheduled for the following week. The court also adjourned the trial for one week.

At a hearing the following week, the State provided defendant with discovery, and the court appointed standby counsel to assist defendant at trial.

6

The court also explained that it had attempted, at the prior hearing, to inform defendant "concerning the difficulties that [he] might have when representing himself," but it "never really got to the heart of the discussion because [defendant] essentially refused to answer any of the [c]ourt's questions." The court stated it "never got to the point of telling [defendant] that if he represented himself . . . he would not, in the event of a conviction, ever be able to contend that he suffered from ineffective assistance of counsel[,]" and noted it therefore made that point "clear at this time."

At the third and final pretrial hearing, the court again revisited defendant's decision to represent himself, noting it had previously endeavored to ask defendant questions related to the decision and it had found, based on defendant's responses, "it was apparent . . . the [c]ourt was going to be able to go no further in its attempt to determine if [defendant] was capable of representing himself." The court noted there were areas of inquiry pertinent to its decision whether to grant defendant's request to represent himself that it had not addressed, but the court found that "if the defendant is not going to respond there is no way that the [c]ourt has of knowing that."

The court again asked defendant if he "desire[d]" to represent himself, and defendant said, "Yes, Your Honor." In response to the court's questioning,

7

defendant admitted he had been previously tried before a jury on other charges, and the court informed defendant he had a right to remain silent and that if he decided not to testify the jury would be instructed not to consider his silence as an admission of guilt. The court further instructed defendant that if he opted to testify at trial, he would be required to respond to questions about whether he had previously been convicted of a crime and he would not be permitted to assert his right to remain silent during cross examination by the State.

When asked if he understood those rights, defendant expressed confusion about the purpose of the court's questioning. The court explained its purpose was to determine if defendant could properly represent himself at trial. In response, defendant noted he still did not have complete discovery, and the court thereafter addressed that issue.

Defendant represented himself at trial and on May 15, 2019, the jury found him guilty of second-degree possession of a controlled dangerous substance with intent to distribute, third-degree possession of a controlled dangerous substance, and fourth-degree possession of a controlled dangerous substance. The jury found defendant not guilty of the four remaining charges.

At a July 9, 2019 sentencing proceeding, defendant appeared with new counsel. The State moved orally for imposition of a discretionary extended term

sentence. See N.J.S.A. 2C:44-3(a) (authorizing imposition of extended-term sentences for persistent offenders convicted of first, second, and third-degree offenses). The court directed the State to file a written motion and adjourned the sentencing. That same day, the State filed a motion for an extended-term sentence.

The following day, the court conducted a sentencing proceeding, and merged the third-degree conviction into the second-degree conviction, granted the State's motion for an extended-term sentence, and imposed a twelve-year prison sentence on the second-degree offense. The court also imposed a concurrent eighteen-month prison sentence on the fourth-degree offense.

Defendant appeals from his convictions and sentence. He offers the following arguments for our consideration:

> POINT I
>
> THE COURT'S FINDING THAT DEFENDANT HAD WAIVED HIS RIGHT TO COUNSEL WHEN HE DID NOT WANT TO PROCEED PRO SE AND WAS NOT FULLY INFORMED ABOUT THE CONSEQUENCES OF THE WAIVER WAS ERROR.
>
> A. [Defendant] Did Not Voluntarily Waive His Right To Counsel.
>
> B. Even If [Defendant] Had Wanted To Represent Himself, He Did Not Make A Knowing Waiver Of His Right To Counsel.

POINT II

WRITTEN NOTICE OF THE STATE'S MOTION FOR AN EXTENDED TERM WAS OUT OF TIME, AND THE DEFENDANT HAD NO MEANINGFUL OPPORTUNITY TO RESPOND TO IT IN VIOLATION OF HIS RIGHT TO DUE PROCESS.

II.

Defendant argues he is entitled to a reversal of his convictions because he did not knowingly, voluntarily, and intelligently waive his right to counsel. He claims he repeatedly informed the court he did not wish to represent himself and, for that reason, the court erred by finding he voluntarily waived his right to counsel. He also argues the court failed to adequately inform him about the implications of his decision to waive counsel and, as a result, his decision to waive his right to counsel was not made knowingly and intelligently.

We review a court's ruling on a defendant's request to waive the right to counsel and appear as a self-represented litigant for an abuse of discretion. State v. Outland, 245 N.J. 494, 507 (2021). A court abuses its discretion when its "decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." United States v. Scurry, 193 N.J. 492, 504 (2008) (citing Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution both guarantee all defendants in criminal prosecutions the right to . . . the [effective] assistance of counsel." Outland, 245 N.J. at 505. A defendant also has a constitutional right "to represent oneself at trial, so long as the defendant has 'voluntarily and intelligently' waived the right to counsel." State v. Rose, 458 N.J. Super. 610, 625 (App. Div. 2019) (quoting Faretta v. California, 422 U.S. 806, 807 (1975)).

"Because the '[a]ssistance of counsel is essential to ensuring fairness and due process in criminal prosecutions,' relinquishing one's right to the benefits of representation of counsel can be allowed only when the court is satisfied the defendant understands 'the implications of the waiver [of counsel].'" Outland, 245 N.J. at 505 (alterations in original) (quoting State v. Crisafi, 128 N.J. 499, 509 (1992)). To determine if a defendant has such an understanding, "the trial court must ascertain, in a so-called 'Faretta hearing,' whether the waiver is indeed knowing, voluntary, and intelligent after a searching inquiry that involves advising the defendant of the risks and pitfalls of self-representation." Rose, 458 N.J. Super. at 627.

The purpose of the requisite searching inquiry "is not to ascertain whether a defendant possesses technical legal knowledge," but rather it is to "apprise the

11

defendant 'of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" Outland, 245 N.J. at 506 (quoting Faretta, 422 U.S. at 835). "[T]o ensure that a defendant's waiver of counsel is knowing and intelligent," there are "topic areas that a trial court must explore with a defendant seeking to proceed pro se." Ibid.; see also State v. Reddish, 181 N.J. 553, 593-94 (2004); Crisafi, 128 N.J. 510-12.

A trial court is "require[d] . . . to inform a defendant asserting a right to self-representation of" the following:

> (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words; (8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.
>
> [State v. DuBois, 189 N.J. 454, 468-69 (2007).]

12

A trial court should also "specifically advise the defendant[] that it would be unwise not to accept the assistance of counsel." Outland, 245 N.J. at 506 (quoting Crisafi, 128 N.J. at 512).

Here, the court recognized its obligation to conduct a searing inquiry of defendant to ensure he fully understood the dangers and disadvantages of his decision to proceed as a self-represented litigant. The court endeavored to engage defendant in that inquiry during the first pretrial hearing but became frustrated by what it found was defendant's "stonewalling." Based on that finding, the court determined that any further questioning of defendant was unnecessary, discontinued its efforts to further question defendant or apprise him about all the prescribed topics, and addressed only issues related to discovery production.

The court's reliance on its finding defendant had stonewalled during the first pretrial proceeded continued during the second and third proceedings. In those proceedings, the court found the stonewalling rendered it impossible to engage in a colloquy with defendant to apprise him about the topics necessary to ensure his decision to appear pro se at trial was made knowingly and intelligently. The court instead chose to simply inform defendant during the second pretrial proceeding that his decision to proceed without counsel would

13

bar him from filing an ineffective assistance of counsel claim and, at the third pretrial proceeding, about his right to remain silent and some risks associated with a decision to testify at trial.

As a result of the court's finding defendant stonewalled in the first instance, and its concomitant decision to thereafter limit its colloquy with defendant about his decision to appear pro se at trial, the court did not inform defendant about numerous topics that must be addressed to ensure the record demonstrates he made a knowing and intelligent decision. See Outland, 245 N.J. at 506; DuBois, 189 N.J. at 468-69.

More particularly, the court did not inform defendant about: the nature of all the charges,[1] the statutory defenses to the charges, and the possible ranges of punishment, including defendant's exposure to an extended term sentence; any technical problems associated with self-representation and the risks if the defense is unsuccessful; the necessity that defendant comply with the applicable rules; the fact that defendant's lack of knowledge could impair his ability to defend himself; and the impact of defendant serving the dual role of counsel and defendant. Ibid. The court also did not inform defendant it would be unwise to

---

[1] During the first pretrial proceeding, the court mentioned only the weapons charges against defendant, and did not identify the drug charges for which defendant was later convicted and sentenced.

A-0565-19

proceed without the assistance of counsel. Ibid. In other words, the court did not mention, address, or discuss many of the topics the Court has determined are essential to ensure a defendant's decision to proceed to trial pro se is made knowingly and intelligently.

We find the court erred by failing to fully address the requisite topics with defendant during the pretrial proceedings. That is because the court's decision to effectively end the process of reviewing the topics is founded on a premise—defendant was stonewalling—not supported by the record.

To be sure, defendant's answers to the court's initial questions about his age during the first pretrial proceeding were evasive, farcical, and non-responsive. Its legitimate frustration with those answers, however, clearly distracted the court from completing the task of apprising defendant of the topics required to create the record necessary to support a finding he knowingly and voluntarily waived his right to counsel. See ibid.; see also Faretta, 422 U.S. at 835.

As the record shows, defendant did not refuse to answer the court's questions about the topics pertinent to his decision to appear pro se. Immediately following defendant's nonresponsive answers to the questions about his age, defendant responded directly to inquiries about topics the Court

requires that a trial court review with a defendant intent upon appearing pro se. The court asked defendant whether he understood the weapons charges against him and if he was aware of the penalties if convicted. See DuBois, 189 N.J. at 468 (requiring a court "inform a defendant . . . of . . . the nature of the charges . . . and possible range of punishment"). Defendant did not refuse to answer the questions, and he did not provide evasive answers to them. The court's finding to the contrary is undermined by the record.

The court's determination it would not further question defendant or inform him about the prescribed topics because defendant stonewalled and refused to answer its questions is simply not supported by the evidence. Moreover, the court's apparent skepticism about the truth of defendant's responses to the questions about the weapons offenses and their attendant penalties did not relieve the court of its obligation to inform defendant about all the prescribed topics essential to the court's determination.[2]  A defendant's perceived or actual recalcitrance does not excuse a court's failure to cover the

---

[2]  Indeed, the court recognized its obligation in the second and third pretrial proceedings by informing defendant concerning the unavailability of a subsequent ineffective assistance of counsel claim and issues related to his right to remain silent at trial, although without asking defendant any questions related to those issues.  But the court did not complete the required process by addressing the remaining topics.

16

required topics with a defendant choosing to forego counsel because, at the end of the process, the court must make a finding the defendant knowingly and intelligently waived his right to counsel.

Here, the court was required to review all the topics with defendant and should have advised defendant it was unwise to proceed without counsel. Outland, 245 N.J. at 505-06. Depending on defendant's answers to the court's inquiries, whether responsive or not, the court should have made findings, including credibility findings, as to whether defendant knowingly and intelligently waived his right to counsel. See Reddish, 181 N.J. at 594-95 (explaining a court must make credibility determinations concerning a defendant's statements during the inquiry required to determine if there is a knowing and intelligent waiver of counsel). To the extent defendant professed a lack of knowledge of information pertinent to a making a knowing and intelligent decision to waive counsel, the court should have supplemented that information instead of abandoning the process out of frustration. Lacking a record defendant was fully informed of the "dangers and disadvantages of self-representation," Faretta, 422 U.S. at 835, we are compelled to conclude there is insufficient evidence establishing defendant knowingly and intelligently waived his right to counsel, see Outland, 245 N.J. at 506 (explaining the purpose of the

17

court's colloquy concerning a defendant's decision to proceed without counsel is "so . . . the record will establish that [the defendant] knows what he is doing and his choice is made with eyes open" (quoting Faretta, 422 U.S. at 835)).

Generally, a failure to inform a defendant concerning the topics required by the Court "would compel reversal of a conviction." Crisafi, 128 N.J. at 512. However, "in rare cases" where "the record indicates that the defendant actually understood the risks of proceeding pro se, a waiver" unaccompanied by information regarding the prescribed topics required by the Court, may be deemed valid. Id. at 513. The record must support a finding that despite the absence of a full explanation of the dangers and disadvantages of proceeding pro se, the defendant fully "understands the consequences of the waiver." Id. at 512. That did not happen here.

In Crisafi, the Court found the defendant presented "such a rare case" because "his background and experience support[ed] a conclusion that he knew the pitfalls of trying his own case." 128 N.J. at 513. The record showed the defendant was fifty-seven and had "extensive experience with the criminal justice system[,]" including having previously obtained, as a pro se defendant, an acquittal from a jury "on a rape charge." Id. at 513-14. The defendant also had a college degree in business law, and he demonstrated during the pretrial

proceedings his knowledge of the charges against him, and, during trial, his knowledge of the maximum sentence to which he was exposed. Id. at 514-15. The record also established that through the assistance provided to defendant by standby counsel during pretrial and trial proceedings, defendant was "substantially informed" "about 'whatever pitfalls he face[d]'" as a pro se litigant. Id. at 517-18.

The State does not argue this is a rare case where the court's failure to fully inform defendant concerning the issues pertinent to his decision to appear pro se permits a finding defendant knowingly and intelligently waived his right to counsel. And the State does not point to any evidence establishing this is the rare case referenced by the Court in Crisafi. Id. at 513-14. Moreover, defendant is unlike the defendant in Crisafi. Defendant was thirty-one, and had only two prior criminal convictions, one of which was from many years ago when he was a juvenile tried as an adult. There is no evidence he previously represented himself at trial or otherwise; he is a high school graduate and does not have a college degree in law; and there is no record as to what advice, if any, he received from his prior counsel or standby counsel concerning the pitfalls of representing himself at trial.

19

Additionally, the record shows defendant said he did not fully understand the weapons charges against him and was unaware of the attendant penalties. And the court neither provided that information nor explained to defendant the drug charges against him or the penalties, including his exposure to the extended-term twelve-year sentence that was later imposed after he was convicted of the drug charges. See State v. Kordower, 229 N.J. Super. 566, 578 (App. Div. 1989) (finding a court's colloquy with defendant supporting a finding defendant knowingly waived her right to counsel was inadequate because the court did not fully explain the serious nature of the charges, or the maximum sentence that she could receive).

We therefore find the court's failure to create the requisite record establishing defendant made his decision to waive counsel knowingly and intelligently requires the reversal of his conviction and a remand for a new trial. See Outland, 245 N.J. at 506. Prior to the trial on remand, the court shall determine anew whether defendant intends to proceed pro se or with counsel in accordance with the requirements explained by the United States Supreme Court in Faretta, 422 U.S. at 835-36, and most recently summarized by our Supreme Court in Outland, 245 N.J. at 505-07. See State v. Figueroa, 186 N.J. 589, 596 (2006) (explaining a violation of the requirements of Faretta and Crisafi "is of

20

constitutional dimension" and therefore the "defendant must be returned to status quo ante and, hence, is entitled to exercise his constitutional rights anew").

It is therefore unnecessary to address in detail the merits of defendant's claim his conviction should also be reversed because his decision to waive counsel was not made voluntarily other than to note that, as an issue independent of his claim his decision was not made knowingly and intelligently, it is without sufficient merit to warrant a discussion in a written opinion. R. 2:11-3(e)(2). We add only that defendant repeatedly informed the court that he wished to proceed without counsel, and his claim he was forced to make that decision because of frustration with his counsel's alleged failure to obtain discovery is undermined by the record. The court asked defendant if he would want an attorney if he was provided with all outstanding discovery, and defendant responded unequivocally he did not.

For purposes of completeness, we also consider defendant's claim the court erred by granting the State's motion for an extended term because it was not filed within fourteen days of the return of the jury's verdict as required by Rule 3:21-4(e). Neither defendant, who addressed the court and made argument at sentencing, nor his counsel at the sentencing proceedings raised the issue of

21

the untimeliness of the State's application under the Rule. Defendant's counsel sought an adjournment of sentencing because he had just been retained, but the request was founded solely on counsel's claimed unfamiliarity with the trial record. No adjournment was sought based on issues related to the timing of the filing of the State's motion for an extended term sentence.

At sentencing, counsel noted the State filed its motion for an extended term the previous day but he advised the court that nonetheless he was "prepared to address it." Counsel then addressed the merits of the motion, referred to the prior convictions upon which the State relied to support imposition of an extended term under N.J.S.A. 2C:44-3(a), and argued the convictions did not warrant imposition of the extended-term sentence the State sought in its motion.

We decline to further address the merits of the argument because it was "not properly presented to the trial court" and does not "go to the jurisdiction of the trial court or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). And, here, by failing to timely raise the issue before the trial court, defendant effectively precluded the State from addressing, and court from considering, whether there was good cause under Rule 3:21-4(e) permitting the otherwise untimely filing of the motion.

Any arguments made on defendant's behalf we have not expressly addressed are without sufficient merit to warrant discussion in this opinion.  R. 2:11-3(e)(2)

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION