# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5193-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

M.M.,

      Defendant-Appellant.

_____

Submitted September 11, 2019 - Decided September 24, 2019

Before Judges Koblitz and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 09-12-2137.

Joseph E. Krakora, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the May 30, 2018 order denying his post-conviction relief (PCR) petition without a plenary hearing. He claims trial counsel was ineffective by failing to: object to hearsay evidence, request certain jury instructions, or interview an eyewitness. He claims counsel had an "apathetic attitude" during trial, which was conducted in defendant's absence. Because his claims do not give rise to a substantial denial of his constitutional rights, we affirm.

In 2009, defendant was charged with fourth-degree sexual contact, N.J.S.A. 2C:14-3(b), second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(c)(1), fourth-degree child abuse, N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3, third-degree terroristic threats, N.J.S.A. 2C:12-3(b), and third-degree luring a child into a motor vehicle, N.J.S.A. 2C:13-6.

After defendant failed to appear for trial a third time in October 2009, the jury trial proceeded in his absence. He was found guilty of all charges except terroristic threats.

The underlying facts developed at trial are recounted in detail in State v. M.M., No. A-3432-15 (App. Div. Sep. 28, 2017) (slip op. at 2-5). We incorporate those facts into this opinion, emphasizing only those necessary to explain this decision. Defendant, then twenty-one years old, met S.D., who was

A-5193-17T4

a seventeen-year-old customer at his fried chicken store. Defendant mentioned to S.D. that he had a job opening for her. On August 3, 2009, defendant saw S.D. outside a supermarket. They discussed the job opening, and then defendant offered S.D. and her four-year-old brother a ride home. Once in the car, defendant said he had to stop at his home on the way. When they arrived, defendant insisted that S.D. and her brother come inside. Defendant knocked on the door and another man S.D. did not recognize opened the door and led them to a basement apartment. They sat in a living room while defendant went into a bedroom where he said he was looking for a job application.

After a few moments, defendant asked S.D. to follow him into the bedroom so he could talk to her. She entered the bedroom with her young brother. She sat on the bed and defendant began touching her and saying he wanted to make love to her. His friend entered and removed her brother from the room despite S.D.'s protests. Defendant proceeded to try to undress S.D. and convince her to have sex with him, but she resisted and started screaming. Defendant punched her in the face so she would stop screaming, placed both hands on her neck so she could not breathe, and threatened to kill her if she called the police. His friend knocked on the door and told defendant a crowd had gathered outside because they heard S.D. screaming.

A-5193-17T4

S.D. fled the apartment and told three people who were standing there that a man tried to rape her. They told her to call the police, but S.D. left and went home with her brother. At home, S.D. spoke with her grandmother who brought her to the police station to provide a statement. The police brought S.D. to defendant's store, where she identified defendant.

After missing three trial dates, the trial began without defendant. Counsel indicated defendant understood the trial was proceeding in his absence and that he had "chosen not to be [there] on his own free will." During trial, defense counsel argued S.D.'s story had inconsistencies, she was not credible, and the police did not fully investigate the case.

Nearly five years after trial, defendant appeared in court. He told the court he had just returned to the United States because his mother passed away. He said that before his initial trial date, he learned that his mother was seriously ill in West Africa and he missed his trial because he left the country to care for her.

In November 2010, defendant was charged with one count of bail jumping, N.J.S.A. 2C:29-7, in connection with his failure to appear for trial. In September 2015, defendant appeared in court with counsel and pled guilty to bail jumping in exchange for the State's recommendation of a maximum of three years imprisonment concurrent to the sentence to be imposed on the underlying indictment. In March

2016, defendant was sentenced on both indictments to an aggregate term of five years in state prison subject to an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(a).

We affirmed defendant's convictions, noting defense counsel's failure to object to jury instructions and hearsay. M.M., slip. op. at 2, 6-16. Despite finding that hearsay evidence was erroneously admitted, we were not convinced the hearsay testimony was "clearly capable of producing an unjust result" under Rule 2:10-2. M.M., slip. op. at 15.

Defendant raises the following issues on appeal:

> POINT I: THE FAILURE OF TRIAL COUNSEL TO OBJECT TO INADMISSIBLE HEARSAY EVIDENCE AND TO MAKE ANY SIGNIFICANT REQUESTS FOR JURY INSTRUCTIONS, COMBINED WITH CONVEYING AN APATHETIC ATTITUDE IN OPEN COURT REGARDING THE OUTCOME OF THE TRIAL, DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

> POINT II: THE POST CONVICTION RELIEF COURT ERRED WHEN IT FAILED TO CONCLUDE THAT TRIAL COUNSEL'S FAILURE TO INTERVIEW THE ONLY COMPETENT EYEWITNESS TO THE ALLEGED CRIME, WHO WAS DEFENDANT'S FRIEND, DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT III: THE PCR COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BECAUSE THERE WAS A FACTUAL DISPUTE REGARDING WHY TRIAL COUNSEL FAILED TO TAKE A STATEMENT FROM DEFENDANT'S FRIEND WHO WAS PRESENT DURING THE ALLEGED CRIME AND WHETHER DEFENSE COUNSEL ERRONEOUSLY GAVE DEFENDANT PERMISSION TO LEAVE THE COUNTRY,[1] ATTEND TO HIS AILING MOTHER, AND THUS MISS HIS TRIAL DATE.

## I. Ineffective Assistance of Counsel

"Post-conviction relief is neither a substitute for direct appeal, R. 3:22-3, nor an opportunity to relitigate cases already decided on the merits, R. 3:22-5." State v. Preciose, 129 N.J. 451, 459 (1992). A defendant raises a cognizable PCR claim if it is based upon a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey." R. 3:22-2(a).

We review a trial court's legal determinations de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was so deficient that he or she was "not functioning as the 'counsel' guaranteed the defendant by the Sixth

---

[1] Defendant did not claim in his affidavit submitted to the PCR court that trial counsel gave him permission to leave the country.

Amendment," and (2) prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 52 (1987). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689).

Regarding the first prong, a court must "fairly assess the reasonableness of an attorney's performance by 'eliminat[ing] distorting effects of hindsight, . . . reconstruct[ing] the circumstances of counsel's challenged conduct, and . . . evaluat[ing] the conduct from counsel's perspective at the time.'" State v. Petrozelli, 351 N.J. Super. 14, 22 (App. Div. 2002) (alterations in original) (quoting Strickland, 466 U.S. at 689). Regarding the second prong, a defendant must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 694). A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). To be entitled to an evidentiary hearing, a petitioner "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A conviction "will not be overturned merely because the

7

defendant is dissatisfied with his or her counsel's exercise of judgment during the trial." State v. Castagna, 187 N.J. 293, 314 (2006).

## II. Purported Trial Errors

Defendant argues trial counsel was ineffective based on his failure to make an opening statement, object to hearsay, and request certain instructions. Defendant also notes trial counsel's "apathetic attitude in open court."

## A. Opening Statement

Defendant points to trial counsel's failure to provide an opening statement. Rule 1:7-1(a) expressly makes opening statements on behalf of a defendant discretionary. State v. Williams, 232 N.J. Super. 414, 418 (App. Div. 1989). The decision to forego an opening statement does not constitute a per se violation of defendant's constitutional right to an attorney.

## B. Hearsay

Defendant points to trial counsel's failure to object to hearsay evidence and argues trial counsel violated his constitutional right to confrontation. Defendant argues the testimony of Officer Alexa Pizarro and S.D.'s grandmother improperly bolstered S.D.'s credibility. In her testimony, Pizarro described her involvement in the investigation and restated S.D.'s version of the incident. S.D.'s grandmother also repeated what S.D. had told her. Neither witness related

8

any statements S.D. did not testify to herself.   Thus, their testimony did not lead to an improper result.

The next portion of testimony defendant argues was improper hearsay is S.D.'s responses to the State's question on redirect regarding her grand jury testimony:

> Q: And do you remember saying [to the grand jury] that he indicated that he could, like, pay you double in Newark?
>
> A: I remember he said that, but that (sic) not the day that we -- we was in the house.
>
> Q: Okay. So, paying you double didn't mean like I'll pay you double if -- to your understanding did you agree to work at his store and be paid double for sex?
>
> A: No.
>
> Q: You never in your mind thought this person is going to ask me --
>
> A: He told me he was going to give me double but not for sex.
>
> Q: Okay.
>
> A: He never told me about that.

Rule 803(a)(2) provides that a witness's prior statement will not be excluded as hearsay if it is consistent with the witness's testimony at trial and is offered to rebut a charge of recent fabrication, improper influence or motive. Before the

State mentioned the grand jury testimony on redirect, defense counsel on cross-examination asked S.D. about her statement to the police that defendant had offered her double wages, asking:

> Q: [H]ave you ever told the police that he actually or while you asked him for the job in the bedroom and (sic) he said that he would offer you the job and pay you double the wages if you were to make love with -- with him?

The State's line of questioning during redirect addressed defense counsel's suggestion that S.D. was motivated to have sex with defendant for double pay. Contrary to defendant's contention on appeal, the testimony is permissible under Rule 803(a)(2).

Finally, defendant argues statements made by police witnesses regarding the content of 911 phone call records without objection were improperly admitted into evidence. Statements within emergency phone calls made with the primary purpose of enabling police assistance to meet an ongoing emergency may be properly admitted without violating a defendant's constitutional right to confrontation, because such statements are considered nontestimonial. Davis v. Washington, 547 U.S. 813, 822 (2006).

C. Identification Charge and Jury Instructions

Defendant criticizes trial counsel's failure to request an identification charge and his failure to request cautionary jury instructions regarding defendant's alleged statements to the victim.

While the court's final jury instruction did not include a specific charge regarding S.D.'s identifications of defendant both in-court and out-of-court,[2] identification was not an issue because defendant and S.D. were familiar with each other from defendant's store. See State v. Davis, 363 N.J. Super. 556, 561 (App. Div. 2003) (noting "a model identification charge should be given in every case in which identification is a legitimate issue").

Next, defendant briefly claims the court erred by failing to instruct the jury regarding the proper manner to evaluate oral statements allegedly made by defendant. On direct appeal of defendant's conviction we stated:

> S.D. was cross-examined concerning her version of the events and defendant's statements. The court carefully and thoroughly instructed the jurors about their evaluation of the credibility of witness testimony. Moreover, defendant's statements concerning his desire to make love to S.D. were not of great significance when considered in the context of her detailed

---

[2]  See Model Jury Charges (Criminal), "Identification; In-Court and Out-Of-Court Identifications" (rev. 2012).

testimony about defendant's actions. Accordingly, the court's failure to give a <u>Kociolek</u> [3] instruction was not clearly capable of producing an unjust result.

[<u>M.M.</u>, slip op. at 13 (citation omitted).]

Defendant fails to demonstrate that trial counsel's failure to request an identification charge or an instruction regarding S.D.'s testimony concerning defendant's statements constituted ineffective assistance of counsel.

### D. Closing Argument

Defendant also briefly mentions trial counsel's "lackadaisical" attitude before the jury. He asserts trial counsel "acted surprised and appeared nonchalant when he was asked to present his closing argument and he responded by stating he did not know it was 'my turn.'" During closing arguments, trial counsel said:

> I go first? Ladies and gentlemen, members of the jury, the evidence clearly indicates that it is a case of he said, she said.
>
> I'm not saying [M.M.] is, you know, a saint or anything close to a Mother Theresa or something like that. He – he's a married man and he work[ed] in his chicken store.
>
> But he was wrong to flirt with a young girl. Okay? And apparently it was a young girl looking for a job and looking for an opportunity to make a buck.

---

[3] <u>State v. Kociolek</u>, 23 N.J. 400 (1957).

Counsel's closing argument did not "utterly fail[] to 'subject the prosecution's case to meaningful adversarial' scrutiny." State v. Harrington, 310 N.J. Super. 272, 284 (App. Div. 1998) (quoting U.S. v. Swanson, 943 F.2d 1070, 1074 (9th Cir. 1991)) (reversing the defendant's conviction where defense counsel "inform[ed] the jury that there is no reasonable doubt but that his client committed the predicate crime to felony murder"). Defense counsel vigorously urged the jury to disregard the victim's testimony regarding coercion.

### III. Eyewitness

Defendant next argues trial counsel was ineffective because he failed to interview defendant's friend who was present during the incident. With regard to why defense counsel did not call defendant's friend as a witness at trial, the PCR court stated:

> [P]etitioner fails to account for the fact that counsel may have considered the possibility that presenting his friend at trial could prove to be detrimental to his defense as his friend not only allegedly removed the victim's brother leaving petitioner and the victim alone in a bedroom, but allegedly acted as a watchman, warning petitioner that the victim's screaming [was] attracting attention from outside.

Defendant failed to provide an affidavit from the eyewitness stating what he would have said had he been called to testify at trial. Defendant relied instead on his own assertion that he "requested that my trial attorney make sure my

13

friend was at the trial as he would have confirmed" defendant's innocence. It is not enough that defendant claim his friend would have supplied helpful testimony. Defendant's "bald assertions," Cummings, 321 N.J. Super. at 170, do not show that trial counsel was so deficient as to deny his constitutional right to counsel, nor do they show a reasonable probability of prejudice. Strickland, 466 U.S. at 687. Moreover, in light of S.D.'s testimony that the eyewitness removed S.D.'s young brother from the bedroom and alerted defendant that a crowd had gathered due to S.D.'s screaming, we cannot conclude that the decision not to call him at trial was patently unreasonable.

## IV. Evidentiary Hearing

Defendant finally argues the PCR court erred by failing to grant his request for an evidentiary hearing due to a factual dispute regarding why trial counsel did not interview the individual present at the apartment during the incident and whether trial counsel fully explained to defendant the ramifications of his nonappearance for trial. Defendant did not make a prima facie showing of either prong of Strickland. We thus conclude that the PCR court exercised its discretion properly in not conducting an evidentiary hearing. Cummings, 321 N.J. Super. at 170.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION